# Moore, Appellant, v. Pittsburgh.

*Municipalities—Indebtedness—Cities of the second class—Act of May 6, 1915, P. L. 260—Validity—Constitutional law—Constitution of Pennsylvania, Art. I, Sec. 17; Art. III, Secs. 7, 8 and 10—Federal Constitution, 14th Amendment.*

1. Nothing but contracts such as involve property rights are protected by Article I, Section 17, of the Constitution of Pennsylvania, forbidding the passage of any law impairing the obligation of contracts; mere political rights or privileges are not within its purview. The Act of May 6, 1915, P. L. 260, providing that the indebtedness of each city consolidated under the provisions of the Act of February 7, 1906, P. L. 7, shall be paid by the consolidated city, does not offend against this constitutional provision.

2. The said Act of 1915, is a supplement to, not an amendment of, the Act of 1906, and does not violate Article III, Section 6, of the Constitution relating to amendments.

3. The said Act of 1915 is not a local or special law and does not violate Article III, Section 7, of the Constitution forbidding the passage of local or special laws regulating the affairs of counties, cities, townships, wards, boroughs, or school districts.

4. The said Act of 1915 is not contrary to Article III, Sections 8 and 10, of the Constitution limiting the power of municipalities to incur new indebtedness and prescribing the details that must be observed in so doing.

5. The said Act of 1915 does not offend against the 14th Amendment to the Constitution of the United States.

Argued March 27, 1916. Appeal, No. 56, Oct. T., 1915, by plaintiff, from decree of C. P. Allegheny Co., Jan. T., 1915, No. 1229, dismissing bill in equity for an injunction, in case of Joseph F. Moore v. City of Pittsburgh, a Municipal Corporation of Pennsylvania; Joseph G. Armstrong, Mayor; E. S. Morrow, Controller; John M. Goehring, G. A. Dillinger, W. Y. English, Robert Garland, John S. Herron, J. P. Kerr, Enoch Rauh, S. S. Woodburn, Charles H. Hetzel, Members of the Council of said city, and H. M. Landis, Treasurer of said city. Before BROWN, C. J., MESTREZAT, STEWART, FRAZER and WALLING, JJ. Affirmed.

Bill in equity for an injunction.

SWEARINGEN, J., filed the following opinion:

This bill was filed by a taxpayer of the City of Pittsburgh on November 26, 1915. He seeks to have the officers of the said city enjoined from levying a tax upon his property, situated in the former Borough of West Liberty, for the payment of the indebtedness of the various constituent units of the Greater City of Pittsburgh, which existed at the time of the annexation of the said Borough of West Liberty to the said City of Pittsburgh. He alleges that the said Borough of West Liberty had no indebtedness at the time of the annexation; that the statute, under which said annexation was had, provided that each unit should pay its own indebtedness; and that the said city officials are now about to levy a tax upon all the taxable property of the enlarged city for the purpose of paying the indebtedness of all the units thereof, pursuant to the Acts approved May 6, 1915, P. L. 260 and 272, which he avers are unconstitutional and void. The defendants, the City of Pittsburgh, Joseph G. Armstrong, Mayor, and H. M. Landis, Treasurer, answer agreeing with the contention of the complainant, that said acts are unconstitutional. The other defendants, the controller of said city and the members of the council thereof, answered denying the complainant's averments and alleging that said acts are constitutional.

The case was set down upon bill and answer and was argued December 30, 1915, and submitted.

The facts as they appear from the bill and answers are as follows:

1. Joseph F. Moore, the complainant, is a citizen of the United States and of Pennsylvania. He is a resident of, a taxpayer in, and the owner of real estate situate in the Nineteenth Ward (formerly Borough of West Liberty) of the City of Pittsburgh, Allegheny County, Pennsylvania. He files this bill on behalf of himself as well as on behalf of other taxpayers of West Liberty and of Pittsburgh, who may desire to join therein.

2. The City of Pittsburgh, one of the defendants, is a municipal corporation of the Commonwealth of Pennsylvania, and under the laws thereof is a city of the second class. This bill was filed November 26, 1915, and it was duly served upon the respective defendants, either on the same or on the next day. At these dates, Joseph G. Armstrong was mayor of said city, E. S. Morrow, controller; H. M. Landis, treasurer, and John M. Goehring, G. A. Dillinger, W. Y. English, Robert Garland, John S. Herron, J. P. Kerr, Enoch Rauh, S. S. Woodburn, and Charles M. Hetzel were the members of council. The said persons constituted the corporate authorities of said City of Pittsburgh upon said dates, and they so continued during the time the acts occurred, which are hereinafter mentioned and of which complaint is made.

3. Pursuant to an act of the general assembly of Pennsylvania, entitled "An Act for the annexation of any city, borough, township, or part of a township, to a contiguous city, and providing for the indebtedness of the same," approved April 28, 1903, P. L. 332, a petition was, on November 16, 1906, presented to the Court of Quarter Sessions of said County of Allegheny, at No. 108 September Sessions, 1906, praying that the Borough of West Liberty be annexed to the City of Pittsburgh. By an ordinance of the City of Pittsburgh, entitled "An Ordinance giving the consent of the City of Pittsburgh to the annexation of the Borough of West Liberty to the said city," approved November 26, 1906, the said city granted its consent to the annexation of the Borough of West Liberty. A copy of said ordinance is part of paragraph seventh of the bill of complaint. Thereafter, after due notice, a hearing was had thereon in the said Court of Quarter Sessions on January 5, 1907, and, upon said date, it was ordered that an election on the proposed annexation be held in the Borough of West Liberty at the regular spring election in February, 1907. Said election was held on February 19, 1907, which resulted in favor of annexation. On March 2, 1907, the said court

entered a decree, that from and after the first Monday of January, 1908, the territory then embraced within the Borough of West Liberty be annexed to and become part of the City of Pittsburgh.

In said annexation Act of April 28, 1903, it was provided that the territory annexed should pay its own floating and bonding indebtedness and the interest thereon, and that such annexed territory should not be liable for the floating or bonded indebtedness of the city to which it might be annexed.

4. Pursuant to the same Act of April 28, 1903, the Boroughs of Esplen, Sheridan, Beechview, Elliott, and Montooth, and parts of the Townships of Sterrett, Union, Baldwin and O'Hara, all in said County of Allegheny, were duly annexed to and became part of the said City of Pittsburgh. All of said territories were annexed to the City of Pittsburgh prior to the first Monday of January, 1910, excepting the portion of Baldwin Township so annexed, which occurred after the first Monday of January, 1910, but before May 6, 1915.

5. Pursuant to the act of the general assembly of Pennsylvania, entitled, "An Act to enable cities that are now, or may hereafter be, contiguous or in close proximity, to be united, with any intervening land other than boroughs, in one municipality; providing for the consequences of such consolidation, the temporary government of the consolidated city, payment of the indebtedness of each of the united territories, and the enforcement of debts and claims due to or from each," approved February 7, 1906, P. L. 7, the Court of Quarter Sessions of said County of Allegheny, at No. 71 December Sessions, 1906, by its decree entered June 16, 1907, duly consolidated the former City of Allegheny with the City of Pittsburgh. In said consolidation Act of February 7, 1906, it was provided that each of the constituent cities should pay its own bonded and floating indebtedness and liabilities with interest, as the same existed at the time of the consolidation.

6. On May 6, 1915, the Consolidated or Greater City of Pittsburgh was, and it now is, composed of the following cities, boroughs and parts of townships, viz: old City of Pittsburgh, City of Allegheny, Boroughs of Esplen, Sheridan, Beechview, Elliott, Montooth and West Liberty and other parts of the Townships of Sterrett, Union, Baldwin and O'Hara.

7. By an act of the general assembly, approved May 6, 1915, P. L. 272, which is a supplement to the Act of April 28, 1903, P. L. 332, it was provided:

"Section 1. That all the indebtedness of each city, borough, township, or part of a township, annexed to a contiguous city under the provisions of the act to which this is a supplement, as well as the indebtedness of the city to which the same are annexed, shall be paid by the city as enlarged by such annexation; and all territory included within the limits of the same shall be liable for the payment of the floating and bonded indebtedness, and the interest thereon, of all the territory included within such enlarged city; and all taxes hereafter levied therefor shall be uniform throughout the territorial limits of such enlarged city. The provisions of this act shall apply as well to territory heretofore annexed under the provisions of this act, as well as to annexations taking place hereafter under the provisions thereof." There is a general repealing section.

By an act approved May 6, 1915, P. L. 260, which is a supplement to the aforesaid Act of February 7, 1906, P. L. 7, a like provision was made with reference to the indebtedness of the constituent units of a consolidation pursuant to the original act, to which the latter was supplementary. There is also a general repealing section.

8. At the time of the annexation of the Borough of West Liberty to the City of Pittsburgh, to wit, on the first Monday of January, 1908, there was no outstanding bonded or floating indebtedness of said borough. Prior to the proceedings for the levying of the tax, of which complaint is made in this bill, the authorities of the City

of Pittsburgh never levied or assessed or attempted to levy or assess any tax upon the property in the territory, formerly embraced within the Borough of West Liberty, for the payment of any part of the indebtedness of the respective units composing the enlarged City of Pittsburgh; and no taxes of such a character have been paid by the owners of property within the limits of the former Borough of West Liberty.

9. At the time this bill of complaint was filed the corporate officers and council were engaged in preparing the annual budget for the fiscal year 1916. Since the filing of said bill, the city council finished its hearings on the budget and, as a result thereof, made various appropriations for the current expenses of the Greater City of Pittsburgh for the fiscal year beginning January 1, 1916, and included therein a sufficient amount for the payment of interest accruing on the pre-existing indebtedness of said city and of the constituent units thereof during such fiscal year, and for the payment of such installments of the principal of such pre-existing indebtedness as might be required for sinking fund purposes during said period. On December 9, 1915, an ordinance was duly enacted for said purposes, which became a law on December 21, 1915, levying taxes on all subjects of taxation throughout the Greater City of Pittsburgh, including the territory formerly of West Liberty, for the purpose of raising revenue for the maintenance of the city government during the fiscal year of 1916 and for the payment of all appropriations so made.

10. The pre-existing indebtedness of the former cities and boroughs, which were annexed to and form part of the Greater City of Pittsburgh, consists entirely of bonded indebtedness, the gross amount being $18,553,006, and the several sinking funds created to redeem such bonded indebtedness, having their own reserves, consisting of either cash or bonds of city, aggregating $5,591,-678.84. The net pre-existing indebtedness of the said

units is therefore $12,961,327.16.   A correct statement
of the same as of December 31, 1915, is as follows:

### BONDS OUTSTANDING.

| | |
|---|---:|
| Former City of Pittsburgh | $12,161,900.00 |
| Former City of Allegheny | 5,932,856.00 |
| Elliott Borough | 42,000.00 |
| Esplen Borough | 18,250.00 |
| Montooth Borough | 32,500.00 |
| Sheridan Borough | 346,500.00 |
| Beechview Borough | 19,000.00 |
| | $18,553,006.00 |

### SINKING FUND RESERVES CONSISTING OF CASH AND CITY BONDS.

| | |
|---|---:|
| Former City of Pittsburgh | $3,717,453.52 |
| Former City of Allegheny | 1,813,046.50 |
| Elliott Borough | 2,396.69 |
| Esplen Borough | 6,678.89 |
| Montooth Borough | 8,280.38 |
| Sheridan Borough | 32,962.57 |
| Beechview Borough | 10,860 20 |
| | $5,591,678.84 |

### NET DEBT.

| | |
|---|---:|
| Former City of Pittsburgh | $8,444,446.48 |
| Former City of Allegheny | 4,119,809.50 |
| Elliott Borough | 39,603.31 |
| Esplen Borough | 11,571.11 |
| Montooth Borough | 24,219.62 |
| Sheridan Borough | 313,537.43 |
| Beechview Borough | 8,139.71 |
| | $12,961,327.16 |

Two and forty-eight hundredths (2.48) mills on the dollar is the amount included in the 1916 tax levy ordinance for the payment of interest on such pre-existing indebtedness, falling due during such fiscal year, and the amount required to be paid during such period into the sinking fund for the redemption of the bonds evidencing such pre-existing indebtedness.

## OPINION.

At No. 1927 October Term, 1915, of this court, upon a bill filed by Robert A. Troop against the City of Pittsburgh, et al., it was determined, inter alia, that the aforesaid Acts of May 6, 1915, are constitutional. In this bill, this complainant again questions the constitutionality of said acts upon the same and upon some additional grounds. The proposition, upon which he mainly relies, is that West Liberty Borough consented to annexation on the faith of the provisions of the Act of April 28, 1903, P. L. 332, exempting the borough from liability for the indebtedness of the other units of the enlarged city, and that the Act of May 6, 1915, P. L. 272, which undertakes to make the borough responsible in part for such indebtedness, is therefore in violation of the organic law.

The complainant first refers to Article I, Section 17, of the Constitution, which forbids the passage of "any law impairing the obligation of contracts." We are unable to perceive that the Borough of West Liberty or its inhabitants acquired any contract rights by virtue of its annexation to Pittsburgh, under the Act of 1903. Nothing but contracts, such as involve property rights, are protected by said constitutional provision. Mere political rights or privileges are not within its purview. The control of the legislature over the municipal divisions of the State is well recognized. They are its agencies. With respect to the indebtedness of such municipal divisions as may be united or divided pursuant

to law, this control is not limited: 20 Cyc. 220; Dillon on Mun. Corp., Vol. I, Sec. 357, (5th Ed.).

It therefore follows that the legislature might have imposed upon boroughs, in the annexation Act of 1903, the same liabilities as are now imposed by the Act of 1915; and it might have provided for the annexation of boroughs to cities without the vote of the people at all. Their consent was a mere detail, which was not essential to the validity of the statute. The thing, therefore, which the people of West Liberty acquired by the provisions of the Annexation Act of 1903 was but a privilege, as distinguished from a right of contract. It was in a sense a gratuity on the part of the lawmakers, but there was no relinquishment of power over municipal indebtedness. It follows that the privilege thus obtained was revocable at the pleasure of the grantors. If this be true, then no contract rights were created by the proceedings for the annexation of West Liberty to the City of Pittsburgh. Consequently, the Act of 1915 in no wise impaired any contractual obligations. The authorities cited for our conclusions in the case of Troop v. Pittsburgh, et al., 254 Pa. 172, need not be repeated here.

The complainant contends that the said Act of 1915 does not conform to the Constitution, Article III, Section 6, in that it is really an amendment and is not a supplement. In the case of Troop v. Pittsburgh, et al., supra, we held that said act is a supplement, and we need not repeat the reasoning which led to that conclusion.

The complainant next charges that this act is contrary to Article III, Section 7, of the Constitution, which forbids the passage of local or special laws, "regulating the affairs of counties, cities, townships, wards, boroughs or school districts." In our opinion, this Act of 1915 is not a local or special law at all. It is a general law in form and in fact. Hence, the objection is not well taken,

because the regulation of affairs of counties, etc., by general law is not prohibited.

We cannot perceive how this act violates Article IX, Section 1, of the Constitution, which provides for uniformity of taxation. No reason is given for the proposition, that we can regard as sufficient.

Neither can we agree that said Act of 1915 is contrary to Article III, Sections 8 and 10, of the Constitution. These sections limit the power of a municipality to incur new debt and prescribe the details that must be observed in so doing. It is well settled that annexation or consolidation, such as is provided in the Act of 1903, does not operate as an increase of debt. It is the incurring of new debt that is limited by the sections of the Constitution, to which reference has just been made.

"The effect of the constitutional provision is limited to those municipal transactions which create indebtedness; hence, it does not prevent the annexation or consolidation of two or more cities or other municipalities, even if one of them has reached or exceeded the constitutional limit, for thereby the debt of the cities is not increased": Dillon on Mun. Corp., Vol. I, Sec. 119, 5th Ed., (page 345).

So also, in our opinion, the complainant's contention, that this act offends against the Fourteenth Amendment of the Constitution of the United States, is unsound.

We cannot agree with the argument, that this annexation having taken place, the original act cannot be changed. It was provided in the original for the continued existence of the cities and the annexed boroughs, until the pre-existing indebtedness of each is paid, as well as for the collection of any assets due such municipalities. In addition, authority was given for levying a separate indebtedness tax. The annexations, therefore, were not entirely complete. The supplementary Act of 1915 has the effect of completing the annexations and

thereby bringing to an end the artificial existence of the former municipalities.

From the foregoing we reach the following conclusions of law:

First.    The acts of the general assembly of Pennsylvania, approved May 6, 1915, P. L. 260 and P. L. 272, are constitutional and valid.

Second.    The ordinance of the City of Pittsburgh, described in Findings of Fact 9, is valid and legal.

Third.    The injunction for which the complainant has prayed in his bill should be refused.

Fourth.    The bill should be dismissed at the costs of the complainant.

The court dismissed the bill.    Plaintiff appealed.

*Error assigned* was the decree of the court.

*Walter S. Lobingier* and *Charles K. Robinson,* Assistant City Solicitor, with them *Charles A. O'Brien,* City Solicitor, and *B. J. Jarrett,* Assistant City Solicitor, for appellant.

*Lee C. Beatty,* for City Council and City Controller.

PER CURIAM, May 23, 1916:

The sole question raised on this appeal is the constitutionality of the Acts of May 6, 1915, P. L. 260 and 272. We find nothing in the objections to their constitutionality which would have justified the court below in declaring them to be legislation in contravention of the Constitution, and the decree is affirmed at appellant's costs, on the opinion of the learned chancellor dismissing his bill.