THE CITY OF APALACHICOLA, A MUNICIPAL CORPORATION UNDER THE LAWS OF THE STATE OF FLORIDA, *Appellant*, v. THE STATE OF FLORIDA, *et al.*, *Appellees*.

### Division B.

### Opinion Filed April 15, 1927.

1. Where there are valid local or special laws relating to the powers and government of particular municipalities that are in conflict with the general statutory law, such local or special laws prevail.

2. Where a general law provides supplemental, additional and alternative methods to be pursued to procure local improvements in municipalities, such general law is applicable except where, as in this case, a local law is inconsistent with the general law, in which case the local law must be followed; and this results not from a rule of construction, but from the express provisions of our Constitution.

An Appeal from the Circuit Court for Franklin County; E. C. Love, Judge.

Affirmed.

*R. Don McLeod, Jr.*, for Appellant.

*W. J. Oven*, for Appellees.

BUFORD, J.—The appellant instituted a statutory proceeding to validate a bond issue of that municipality in which it was shown that the proceedings had to authorize the issuance of the bonds sought to be validated were in pursuance to and in accordance with the provisions of Chapter 9298, Laws of Fla., Acts of 1923. It is shown that the City of Apalachicola was incorporated under the provisions of Chapter 7128, Laws of Fla., Acts of 1915; that

Article 7 of the Charter Act authorized the City Commission to pave, grade curb, lay-out, open, repair or otherwise improve any street, alley or highway or part thereof, etc. etc., and authorized the City Commission to assess one-fourth of the cost of such improvement against the property abutting on either side of the street, alley or highway so improved. Article 8 authorized the issue of bonds by the City Commission with the approval of the majority of the registered voters of the City residing therein who own real estate therein and who have paid their taxes for the year last due thereon and actually voting; bonds to bear such. rate of interest as may be deemed best by the Commissioners, not exceeding the legal rate of interest in the State, for the purpose, among other things, of opening, widening, constructing and paving the streets and sidewalks of the City and this Act provided:

"Before any such bonds are issued the question of issuing them, as well as the amount to be issued, shall be submitted to the electors of the City having qualifications hereinabove specified in such manner as may be provided by ordinance, and after no less than thirty days notice by advertisement in a newspaper published in said City. Should a majority of the votes actually cast by said electors be in favor of the bonds and the amount proposed to be issued, in that event it. shall' be lawful for them to be issued.otherwise not. The amount of bonds to be issued by the City shall be limited as follows:

"The amount of bonds so issued for any purpose for other than revenue producing public utilities shall not exceed ten per cent of the assessed value of the real and personal property within the corporate limits of said City, but in addition thereto the City may issue bonds to! the amount of not exceeding Two Hundred and Fifty Thousand Dollars for the purpose of purchasing, constructing and owning revenue producing and self-sustaining public utilities, such

as water-works, power-plants and public docks and terminals and others of a like kind not depending upon taxation for the payment of principal and interest thereon.''

Chapter 11396, Acts of Extraordinary Session of the Legislature of 1925, amended Article 7 and 8 of the Charter Act in part as follows:

''Sec. 58. The City Commissioners shall have the power to lay-out, open, grade, curb, pave, repair or otherwise improve any sidewalk, streets, alleys or highways or any part thereof in said city. When the cost of such work shall exceed Five Hundred Dollars the contract therefore shall be let by bid after advertisement of notice of the time and place of receiving such bids of not less than ten days. The City Commissioners shall have the power to assess any part or all of the cost of the construction of the pavement of the streets of said city against the property abutting on the street so constructed or improved, in the following manner: When any street shall be paved or improved under the provisions hereof, the total cost of such pavement or improvement in front of each block, measured from the center of the intersecting streets at each end thereof, shall be apportioned equally to the blocks abutting said street on either side and one half of the cost or such proportion thereof as may be determined by the City Commissioners shall be assessed against the property on each side of the said street in proportion to the frontage of such property on such street so that the entire costs of such pavement or improvement, or such part thereof as may be determined by the City Commissioners in front of any such block shall be assessed against the property abutting on such street so paved or improved.

''Sec. 59. The assessment so made against the real estate for such pavement or improvement shall be a lien upon the said real estate prior in dignity to all other liens except taxes and shall be certified to the city cashier by the City

Commissioners and shall be collected by the city cashier at the same time and in the same manner as the taxes upon the said real estate; provided that unless the sum so assessed against any part of the said property shall be paid in full at or before the first day of April next after the said lien shall accrue the sum so assessed against any part of the said real estate shall be divided into installments payable annually, bearing interest at such rate not exceeding six per cent per annum and no such annual installment shall exceed five per cent of the assessed valuation of the property against which the same is assessed. The payment of such assessment or any installment thereof or the interest thereon may be enforced by levy and sale in the same manner as is provided for the collection of taxes or by a bill in chancery in any court of competent jurisdiction of the State of Florida.

"Sec. 59½. The City Commissioners shall have the power to issue bonds of the City of Apalachicola for the purpose of paying for the pavement or improvement of the streets of said City after such bonds shall have been authorized by an election as provided in Article Eight of this Act and to provide for the creation of a sinking fund to pay the interest and principal of any bonds so issued by applying thereto all moneys assessed against the property benefitted by the improvements for which said bonds were so issued and collected in the manner herein provided. Any bonds so issued shall be primarily the obligation of the City of Apalachicola and it shall be the duty of the City Commissioners to provide for the payment thereof whether by general taxation or otherwise; but notwithstanding such paving or other improvements may be paid for by the proceeds of the sale of said bonds the cost thereof may be assessed against the property especially benefitted in the manner herein provided and collected and applied to the payment of the said bonds and the interest thereon."

Intervention was filed by J. S. Murrow and others attacking the authority of the City Commission to issue bonds under the .provisions of Chapter 9298, Acts of 1923, and upon the grounds that the provision of Article 7 and Article 8 of Chapter 3128, Acts of the Legislature of 1915, as amended by Chapter 11396, Laws of Fla., Extraordinary Session of 1925, authorizing the issuing of bonds by such municipality had not been complied with. On final hearing a decree was entered by the Circuit Judge, as follows:

"This cause coming on to be heard on January 7th, 1927, pursuant to an order adjourning same from December 27, 1926, and upon the petition of the City of Apalachicola, the answer of the State's Attorney for the Second Judicial Circuit of the State of Florida, the intervention of J. H. Cook and the further intervention of J. S. Murrow, *et al.*, the amendment to said last intervention and the answer thereto of the City of Apalachicola and the same having been argued by counsel for the respective parties, and the Court now being advised of its opinion finds:

"That said petition is for the validation of an issue of Seventy-nine Thousand ($79,000.00) Dollars of street paving bonds of said City of Apalachicola in denominations of One Thousand ($1,000.00) Dollars, dated November 1, 1926, maturing November 1, 1936, bearing interest at the rate of six (6) per cent per annum, payable semi-annually; that said bonds were issued under and pursuant to the applicable provisions of Chapter 9298, Acts of 1923, and that all proceedings and steps taken up to and including the issuance of said bonds were in accordance with the provisions of said Act.

"The power of the city to issue bonds under said Chapter 9298 is alleged at the outset, the contention being that the provisions of said Chapter are not applicable to the City of Apalachicola because of the local and special law, Chapter 11396, Acts of Extraordinary Session of 1925, amend-

ing the charter act of Apalachicola, the same being Chapter 7128, Acts of 1915.

"Section 24 Article 3 of the Constitution of Florida provides that:

" 'The Legislature shall establish a uniform system of county and municipal government which shall be applicable except in cases where local and special laws are provided by the Legislature that may be inconsistent therewith.'

"It is a well settled proposition applying to the construction of two or more statutes bearing upon the same subject matter that if by any fair construction whether strict or liberal a reasonable field can be found so as to give effect to all, that all should stand rather than any should fall. Chapter 11396 amending the Charter of Apalachicola is the last act of the Legislature providing for the issuance of bonds and must govern if its provisions are inconsistent with those of Chapter 9298. To determine this proposition in the affirmative it must appear clearly that both acts have the same purpose and object and cover the same subject. Both acts have for their purpose and object the authorization of the governing authority of the municipal government to issue bonds to cover the expenses of paving streets, to assess the costs of such improvement against adjacent property and to secure the payment of said bonds by liens on such property. Both of said acts have the same purpose in view and provide for both the assessment of property to cover the costs of such improvement and the issuance of bonds secured by liens on such property to pay therefor. Chapter 9298 makes full and definite provisions for accomplishing such purposes and objects, while Chapter 11396 covering the same ground provides different means for paying the costs of such improvements. Chapter 9298, a general act, provides that the costs assessed against property adjacent to the streets to be paved shall be paid by assessments against such property payable in ten equal

annual installments bearing interest at the rate of eight (8) per cent. Under the special act such property is assessed the costs of such improvements, the installments being payable in a sum not to exceed five (5) per cent of the assessed valuation of such property and to bear interest at a rate not to exceed six (6) per cent. The general act authorizes the issuance of bonds by the governing authority of the municipality without an election to pay for such improvement, while the special act authorizes such bonds only after an election has authorized same. There are other inconsistencies and differences between the two acts but the above are sufficient to indicate that there is such a decided inconsistency that the two acts cannot both occupy the same field and both prevail, and the special act being the last pronouncement of the Legislature is construed to provide an exception to said general act as far as the City of Apalachicola is concerned to the extent that no bonds for the purposes covered by both acts can be valid until after they shall be authorized by an election called and held for such purpose.

"It is therefore considered by the Court that the prayer of said petition for the validation of said bonds be denied, that said petition be dismissed and that the costs of these proceedings to be taxed by the Clerk of said Court be paid by the petitioner, the said City of Apalachicola."

From this decree appeal was taken.

In the case of Ferguson, Marchal, v. McDonald, 66 Fla. 494, 63 Sou. 915, this Court says:

"Where there are valid local or special laws relating to the powers and government of particular municipalities that are in conflict with the general statutory law, such local or special laws prevail."

The same rule is enunciated in Sanders v. Howell, 73 Fla. 563, 74 Sou. 802 and in State ex rel. Triay v. Burr et al, 79 Fla. 290, 84 Sou. 61, the Court say:

"If there is a general law conferring upon municipalities authority to fix rates for street railroads and also a special law conferring a similar power upon a particular city, being inconsistent with the general law, the special local law prevails as the city to which it applies."

The decree rendered by the learned Circuit Judge disstinctly points out some material differences between the provisions of the charter act as amended with reference to authority to issue bonds and the provisions of Chapter 9298, which is a general act containing provisions on the same subject, and clearly states the rule govering in such cases under the provision of Section 24, Article 3 of the Constitution of Florida.

Where a general law provides supplemental, additional and alternative methods to be pursued to procure local improvements in municipalities, such general law is applicable except where, as in this case, a local law is inconsistent with the general law, in which case the local law must be followed: and this results not from a rule of construction, but from the express provision of our Constitution.

In the case of the City of St. Petersburg, v. Pinellas County Power Co., 87 Fla. 315, 100 Sou. 509, the general law there under consideration was not inconsistent with the local law before the court in that case, and therefore, the general law was held there to be applicable under the provision of our Constitution.

The decree of the Circuit Judge should be affirmed and it is so ordered.

Affirmed.

WHITFIELD, P. J., AND TERRELL, J.,concur.

ELLIS, C. J., AND STRUM AND BROWN, J. J., concur in the opinion.