STATE OF FLORIDA, *Appellant*, vs. CITY OF MIAMI, a municipal corporation, *Appellee*.

En Banc.

Opinion filed April 22, 1931.

*Vernon Hawthorne*, State Attorney, for Appellant;

*J. W. Watson, Jr.,* and *Chester B. Masslich,* for Appellee.

TERRELL, J.—The City of Miami filed its petition to validate eight issues or series of refunding bonds (Series "Q", "R", "S", "T", "U", "V", "W", and "X") pursuant to Chapter 11855 Acts of 1927 (Section 2378 et seq. Compiled General Laws of 1927). All requisite steps in the cause were taken leading to a final decree validating each and every series of said bonds. This appeal is from the validating decree as to series "T", "V", "R", and "W".

It is first contended that series "T" and "V" should not have been validated because the bonds they were designed to refund, were issued subsequent to the enactment of Chapter 11855 Acts of 1927.

This contention is bottomed on the claim that Chapter 11855 Acts of 1927 has no prospective effect and authorizes

the refunding of no indebtedness, other than that in esse at the date of the passage of that act. It is true that section one of Chapter 11855 after enumerating the governmental entities that may refund and the species of indebtedness that may be refunded employs the present perfect tense of the verb, "is pledged" to express its mandate. If courts were bound to a rigid literal interpretation of terms there might be substance in this contention, but it is too well settled for argument that in the application of a statute, if there should be apparent variance between its clear intent and its literal implication, courts will adopt the former rather than the latter application.

The complement of this rule is that when a statute is expressed in general terms and in words of the present tense, it will generally be construed to apply not only to things and conditions existing at the time of its passage, but will also be given a prospective effect and made to apply to such as come into existence thereafter. 36 Cyc. 1235. Finding no intention expressed or implied to restrict the application of Chapter 11855 to the refunding of bonds issued prior to its passage, we think it must be prospective in effect and authorizes the refunding of bonds issued prior to and subsequent to its passage.

It is next contended that the Chancellor erred in his decree validating series "R" and "W" because the indebtedness they were intended to refund was undertaken when the territorial limits of Miami were much more restricted than when the said series was issued, yet it is proposed to impose payment of said series on the enlarged city.

It appears that the petition to validate Series "R" and "W", was filed January 5, 1931, that in September 1925, the city limits of Miami were extended pursuant to Sec-

tions 1921 and 1922 Revised General Statutes of 1920 (Sections 3054 and 3055 Compiled General Laws of 1927) to include the City of Cocoanut Grove, the towns of Silver Bluff and Buena Vista with other territory and that said extension was in all respects ratified and confirmed by Chapter 11617 Acts of 1925, extraordinary session. It also appears that the debt of the City of Miami to be refunded with series "R" and "W" was incurred prior to September 1925 and that both the validating act and the statute under which the territorial limits of Miami were extended provided that the annexed territory should not be required to pay any portion of the debt of the city to which it was annexed, Section 1922 Revised General Statutes of 1920 providing in part as follows:

"Provided, however, that the real estate or other property which may be within any territory so annexed at the time of any such election shall not be liable for, nor taxed to pay any bond indebtedness of the city or town to which it may be annexed existing at the time of any such election; and Provided further that the real estate or other property which may be within the city or town to which such annexation may be made shall not be liable for, or taxed to pay any bond indebtedness of any such city or town so annexed which may be existing at the time of such election."

The Appellee contends that the right acquired by the people in the territory annexed to the City of Miami under the law as above was a mere political right or privilege extended them by the legislature, that it was nothing more than a gratuity, that it was in no sense a contract or property right, but could be revoked at the pleasure of the granting power and that it was in fact revoked by Chapter 11855 Acts of 1927 authorizing the issuance of refunding

bonds and providing a tax on *all* taxable property in the city to retire them. The following cases were cited to support this contention: Johnson vs. City of San Diego, 109 Cal. 468, 42 Pac. Rep. 249, Layton vs. New Orleans, 12 La. Ann. 515, Moore vs. City of Pittsburg, 254 Pa. 185, 98 Atl. Rep. 1037, White vs. City of Atlanta, 134 Ga. 532, 68 S. E. Rep. 103, 12 Corpus Juris 1007.

These cases undoubtedly support Appellee's view but they all treat instances where the legislature peremptorily undertook to exclude territory from or bring it into the parent city and apportion the burden incident thereto in its discretion. Under the plenary power given the legislature (Section 8, Article 8 Constitution of Florida) to regulate municipalities we would be inclined to follow the reasoning in these cases in a like situation but the case at bar presents a different state of facts. We are not confronted here with the proposal of the parent city to issue refunding bonds as contemplated by Chapter 11855 Acts of 1927, but we are dealing with the parent city as enlarged by Sections 1921 and 1922 Revised General Statutes of 1920, as affected by Chapter 11617 Special Laws, extraordinary session of 1927. We are therefore driven to the conclusion that the instant question is ruled by the last named act, and Section twenty-four, article three of our Constitution.

Section twenty-four, article three, constitution of Florida in effect provides that the legislature shall establish a uniform system of county and municipal government which shall be applicable except in cases where local or special laws are provided that may be inconsistent therewith. The territory annexed to Miami in 1925 came in with the express reciprocal guaranty that it would not be required to help pay the debt of the parent city previously incurred nor would the parent city be required to help pay any debt

of the annexed territory. The purpose of Chapter 11617 Special Acts, extraordinary session of 1925 was to reenact this guaranty. Chapter 11855 Acts of 1927 authorizing cities and other governmental entities to issue refunding bonds being a general act is inconsistent with Chapter 11617 as applied to the City of Miami in that it provided a tax on *all* taxable property in the city to pay said bonds. Since both acts relate to "municipal government" under Section twenty-four of article three of the Constitution, to the extent of such inconsistency, the latter act must prevail. State *ex. rel.* Triay vs. Burr, 79 Fla. 290, 84 So. 61, State *ex. rel.* D'Alemberte vs. Sanders, 79 Fla. 835, 85 So. 333, City of St. Petersburg vs. Pinellas County Power Co., 87 Fla. 315, 100 So. 509, City of Daytona Beach vs. State .. Fla. .., 131 So. 789, City of Apalachicola vs. State, 93 Fla. 921, 112 So. 618, Sanders et al. vs. Howell, 73 Fla. 563, 74 So. 802, Ferguson vs. City of Miami, 66 Fla. 494, 63 So. 915.

In City of Daytona Beach vs. State .. Fla. .., 131 So. 789, this court construed Chapter 10466 Acts of 1925 abolishing the municipalities of the "City of Daytona", "Town of Daytona Beach" and "Town of Seabreeze" and creating in lieu thereof, the City of Daytona Beach. We there held that Chapter 11855 Acts of 1927 authorized the City of Daytona Beach to issue refunding bonds to fund the debt of the City of Daytona, to be paid by said City as it originally existed, but that Chapter 10466 Acts of 1925 which also provided for refunding did not authorize bonds to refund the indebtedness of anyone of the abolished municipalities payable by taxes distributed over the new municipality of the City of Daytona Beach.

The appeal in this cause was entered March 4, 1931, and on March 24 following a nunc pro tunc order was entered

to show that on January 29, the court had ordered an adjournment from "time to time and day to day" in the interest of all parties to the cause. On application to this Court March 28, that order was treated as part of the record on appeal and two additional assignments of error were predicated thereon. Appellant contends that such procedure was error.

Appellant predicates his contention on Section 3298 Revised General Statutes of 1920 (Section 5108 Compiled General Laws of 1927). We have examined this Statute and we find no inhibition against a judge in the exercise of a reasonable discretion adjourning from "time to time and day to day" in the interest of the parties, as he is authorized to do in other causes. Courts have inherent power to make their records speak the truth and that is all the nunc pro tunc order complained of did, it being admitted that no citizen or taxpayer was prejudiced by it. White Engineering Corporation vs. People's State Bank of Lakeland, 81 Fla. 35, Text 50, 87 So. 753, Text 758; Ricou vs. Merwin, 94 Fla. 86, 113 So. 745; 21 C. J. 646, par. 828. This court has approved the practice of amending assignments of error after appeal, as a guide for making up the transcript. Harper vs. Bronson, 98 Fla. 941, 124 So. 732.

It follows that the decree below is affirmed as to series "T" and "V" refunding bonds, and it is reversed as to series "R" and "W" refunding bonds.

Affirmed in part and reversed in part.

BUFORD, C.J., AND WHITFIELD, ELLIS, BROWN AND DAVIS, J.J., concur.