IDA L. BROWARD, a widow, v. GARRISON INVESTMENT CORP., W. F. SPRUILL, JR., NORMAN CORDON, and WILLIAM S. GILLIS.

163 So. 212.

Opinion Filed September 27, 1935.

*James M. Carson* and *Morrow & Mayes,* for Plaintiff in Error;

*Albert B. Bernstein,* for Defendant in Error.

BUFORD, J.—The writ of error brings for review judgment in favor of the defendant in an ejectment suit filed by

plaintiff in error here to recover possession of certain property in the City of Miami, Dade County, Florida.

Several questions are presented but the controlling question is whether or not the provisions of the Charter Act of the City of Miami in regard to the assessment and collection of taxes is controlling or, in connection with those provisions, it is necessary that the provisions of Sections 728, 732 and 734 R. G. S. 934, 940 and 942 C. G. L., must also be complied with.

This issue is presented because of the fact that the defendants deraigned their title from the holder of the tax deed issued by the proper officers of the City of Miami because of the non-payment of municipal taxes on the described parcel of land.

The controlling provisions of the Charter Act contained in Chapter 10847, Special Acts of the Regular Session of the Legislature of 1925, are Sections 42, 43, 44, 45, 46 and 50 and are as follows:

"Sec. 42. The general law of the State of Florida upon the subject of taxation as it now exists shall apply to and govern in the assessment, levy and collection of taxes in the City of Miami and in the return and sale of property delinquent therefor; and shall also apply and govern in respect to the powers, duties and liabilities of persons and property touching and concerning such taxes and shall have full force and effect in said city as far as the same may be applicable, except as herein otherwise provided.

"Sec. 43. The Assessor shall possess all the powers, discharge all the duties, and be subject to all the liabilities in, for and to the city, that are conferred and imposed upon County Assessors, by the provisions of the law mentioned and referred to in the preceding section, in relation to the assessment and taxation of property, so far as the same may

be applicable and except as herein otherwise provided. He shall in each year prepare a General Assessment Roll for the city and complete the same before the time fixed by this Charter for the first meeting of the Board of Equalization in each year.

"Sec. 44. After the said Board of Equalization shall have completed the revision of said roll the City Clerk shall endorse and sign a statement upon the roll to the effect that the same is the General Assessment Roll for the city for the year in which it has been prepared, as approved by the Board of Equalization. Such statement may be in substantially the following form, viz.:

"State of Florida,
"County of Dade,
"City of Miami.

"I hereby certify that the Board of Equalization of the City of Miami has reviewed, equalized and corrected the within Assessment Roll and has (deducted from or added to as the case may be) ...........................dollars (from or to as the case may be) the valuation of the real estate made by the assessor and has determined the aggregate value of such real estate to be ...........................dollars, and a total value of the personal property to be......................................
dollars for the year................

*Dated*...........................................
"City Clerk.

"Upon the completion of such roll and its endorsement in the manner aforesaid, it shall be returned to the Assessor and shall be presumed by all courts and tribunals to be valid and shall not be set aside, except for causes mentioned in the general laws of the state relating to the assessment of property and the levy and collection of taxes thereon. The

omission of such endorsement, however, shall not affect the validity of any such roll.

"Sec. 45. Upon the equalizing of the said assessment roll by the Board of Equalization of the City of Miami and the fixing of the millage by the Commission, the assessor shall proceed to assess the taxes according to and in proportion to the valuation entered by the Board of Equalization in the assessment of the city for the year. The total of all taxes assessed against any one parcel of property shall be footed up and carried out in the last column on the right side of such rolls. All the taxes there assessed shall become at once a debt to the city from the persons to whom they are assessed. All personal taxes shall be a lien upon the personal property of such persons so assessed from and after the assessment thereof, and remain a lien thereon until paid, and shall be superior to the rights acquired under any sale, assignment or chattel mortgage, levy or lien upon any such personal property executed or made after such assessment, except when such personal property is sold in the regular course of trade. The amounts assessed on any real estate shall become a lien on the first day of January of the year in which the assessment is made on such real property and the lien for such amount and for all interest and charges thereon shall continue until payment thereof.

"Sec. 46. The assessor shall thereupon make a copy of such assessment roll with such taxes extended thereon. He shall annex that to a warrant signed by him commanding the Director of Finance to collect the several sums mentioned in the last column of the said roll."

"Sec. 50. Deeds made by the City of Miami pursuant to tax sale, or sale under decree granted for the collection of local assessments, shall be admissible in evidence on the same terms as deeds made pursuant to sales for taxes due

the State and County; but it shall be competent for persons denying the validity of such tax deeds, or assessment deeds, to put in evidence the proceedings preliminary to the execution thereof. The purpose of this provision is to give such deeds and all recitals therein the same *prima facie* force and validity accorded to tax deeds made by officers of the state and county."

The sections of the general law referred to are available to the bench and bar. Therefore, it is not necessary to quote them here. It is sufficient to say that it is contended here by the plaintiff in error that the City of Miami was required to conform to Section 934 C. G. L. and that the same was not complied with, in that an original and two copies of the assessment roll for the year 1927 were not made as required by Section 934 C. G. L. The answer to that is found in Section 43 of the Charter Act above quoted where it is provided in defining the duty of the tax assessor with reference to the assessment roll, "He shall each year prepare a general assessment roll for the city and complete the same before the time fixed by this Charter for the first meeting of the Board of Equalization in each year."

The succeeding section, 44, provides that after the Board of Equalization shall have completed the revision of the assessment roll, the Clerk shall endorse and sign a statement upon the roll to the effect that the same is the general assessment roll for the city for the year for which it has been prepared as approved by the Board of Equalization. That section also provides the substantial form of such certificate and further provides that upon the completion of such roll and its endorsement in the manner aforesaid, it shall be returned to the assessor and shall be presumed by all courts and tribunals to be valid and shall not be set aside, except for the causes mentioned in the general laws of the

State relating to the assessment of property and the levy and collection of taxes thereon. It is provided further that the omission of such endorsement, however, shall not affect the validity of any such roll.

Section 45 provides that upon equalizing of the roll, as above mentioned, and the fixing of the millage by the Commission, the Tax Assessor shall proceed to assess the taxes according to and in proportion to the valuation entered by the Board of Equalization.

The section then provides that the amounts assessed on any real estate shall become a lien on the first day of January of the year in which the assessment is made on such real property and the lien for such amount and for all interest and charges thereon shall continue until the payment thereof.

It is our opinion that the City Charter in the above mentioned provisions takes precedence over the general law above referred to and is controlling and that, therefore, the record fails to show any invalidity in the tax deed.

Where there is conflict between the general law and special charter provisions included in a legislative Act, it is well settled that the special charter provisions will prevail. See City of Apalachicola v. State, et al., 93 Fla. 921, 112 Sou. 618; Wade v. City of Jacksonville, 113 Fla. 718, 152 Sou. 197; Ex Parte Perry, 71 Fla. 250, 71 Sou. 174; State v. City of Miami, 101 Fla. 292, 134 Sou. 608; Sanders v. Howell, 73 Fla. 563, 74 Sou. 802; Ferguson v. McDonald, 66 Fla. 494. 63 Sou. 915; State, ex rel. Dofnos Corporation v. Lehman, et al., 100 Fla. 1401, 131 Sou. 333. In the latter case we held that where the Charter Act required a certificate of the City Tax Assessor to be affixed to the assessment roll, and this provision was not complied with, it would vitiate the roll. But, we did not hold that where

the provision of the Charter Act had been complied with the roll would be vitiated because of non-compliance with some general law as to which the special Charter Act took precedence.

We find from the record that the warrant of the Tax Assessor addressed to the Tax Collector was attached to the roll, complying with Section 46 of the Charter Act. Therefore, the case of State, *ex rel*. Dofnos, etc., v. Lehman, *et al.*, can not be relied upon to sustain the position of the plaintiff in error.

We have found no reversible error disclosed by the record. Therefore, the judgment should be affirmed and it is so ordered.

Affirmed.

WHITFIELD, C. J., and TERRELL, BROWN and DAVIS, J. J., concur.