Certiorari proceeding by the City of St. Petersburg, a municipal corporation of the state of Florida, against Jerry W. Carter, as Chairman, and Wilbur C. King and Richard A. Mack, as Members of and constituting the Florida Railroad and Public Utilities Commission, to review an order of the commission.
Writ granted and order quashed.
It is conceded by all parties to this proceeding that the City of St. Petersburg and Town of Gulfport, which the Street Railway System of the City serves, are cities or towns whose boundaries adjoin. The charter of the City of St. Petersburg grants unto said city the right to operate utilities including a transportation system within and without the limits of the city and also gives to the city the power to establish rates and charges for such services. It is our view that under such circumstances the *Page 805 
Florida Railroad and Public Utilities Commission was not given, nor did the legislature intend that it should have, jurisdiction of this municipally owned and operated street railway system. It is true that chapter 350 does define the term "railroad corporation" or "railroad company" as meaning "all corporations, associations, partnerships, receivers, trustees or any other persons now owning or operating or which may hereafter own or operate any railroad in whole or in part in this state * * *." Said statute also defines the term "common carrier" as "all persons owning and operating railroads, wholly or partly within this state. * * *"
There is no express provision in Chapter 350, F.S.A. 1941, which makes said chapter applicable to municipal corporations. Although persons versed in the law know that each city or town which has received a charter from the sovereign state is, technically speaking, a municipal corporation, even they (most legal text and reference books index municipal corporations under an independent heading) and certainly the public generally do not think of cities and towns when the word "corporations" is used unless it is preceded by the word "municipal." The thought which the writer has in mind was aptly expressed by Mr. Justice Frankfurter in the case of Addison v. Holly Hill Fruit Products,322 U.S. 607, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488, 153 A.L.R. 1007, when he said "After all, legislation when not expressed in technical terms is addressed to the common run of men and is therefore to be understood according to the sense of the thing, as the ordinary man has the right to rely on ordinary words addressed to him."
It is generally held, and not without sound reason, that the word "corporations" does not include municipal corporations unless they are either expressly included by apt words or there is a clear unmistakable intention that they be included. Donahue v. City of Newburyport, 211 Mass. 561, 98 N.E. 1081, Ann.Cas. 1913B, 742; Wilcox v. City of Idaho Falls, D.C., 23 F. Supp. 626. Indeed, private corporations, even if quasi-public in their operations, are clearly intended when the word "corporations" is used along with other words which connote private enterprise. Town of Kearny v. Mayor, etc. of Jersey City, 78 N.J.L. 77, 73 A. 110. The statute here under consideration not only has collocated with the word "corporations" the words "associations," "partnerships," "receivers" and "trustees" but it concludes such list with the following language: "or any other persons." (Italics supplied)
There is respectable authority to the effect that the word "persons" may mean and include municipal corporations but such holding should still be subject to the legislative intent as it is expressed or as it may be gathered from the purpose of the act, the administrative construction of it, other legislative acts bearing upon the subject, and all the circumstances surrounding and attendant upon it.
Chapter 350, F.S.A., does not use the words "municipal corporations" nor is it clear from the context that the legislature intended municipal corporations to be so included. A contrary intention may easily be gleaned from the reading of Chapter 323, F.S.A., and particularly Sec. 323.29. This chapter deals with auto transportation companies under the general title of Motor Vehicles. It does, however, contain the following language: "There should be further exempted from the provisions of this chapter and from commission jurisdiction and control, persons operating motor vehicles within the corporate limits of any city or town or the adjoining suburban territory, or betweencities and towns whose boundaries adjoin, * * * where suchbusiness of carriage is regulated by the legislative bodies ofsuch cites or towns." (Italics supplied) The right of the municipality to regulate the business of carriage of privately owned motor vehicles for hire was expressly recognized. This is inconsistent with any intention on the part of the legislature that the Florida Railroad and Public Utilities Commission should have jurisdiction over municipally owned and operated transportation systems. If the municipalities can be trusted with the exclusive jurisdiction to regulate private owners in their operations of transporting the public, there is no logical reason why the municipality *Page 806 
itself in the operation of municipally owned transportation systems should be subject to the jurisdiction of the Florida Railroad and Public Utilities Commission.
The Florida Railroad and Public Utilities Commission was created for the purpose of protecting the general public from unreasonable and arbitrary charges that might be made by railroads and other transportation companies which may be classified as monopolies. The authority to regulate monopolies springs from the police power of the sovereign state and should be exercised only when necessary for the general welfare and to the end that all types of unjust, arbitrary and unreasonable discrimination against the interest of the public may be eliminated. It is unnecessary to exercise such regulatory power in connection with a municipality which might own and operate any utility. The people themselves own a municipal utility and it functions for their benefit. They should have the right through their constituted officials to make their own regulations. The question naturally arises, Suppose a municipality makes rates and charges which are unjust and unreasonable, should not then there be some method whereby a citizen might have redress for the wrong? The answer to this question is twofold. In the first instance, it is not to be presumed that such situation will be brought about by the officials charged with the responsibility and duty of operating the city and its utilities to the best interests of its citizens; and, secondly, anyone who may be aggrieved can resort to the courts. There is no occasion to give one statutory creature, such as the Florida Railroad and Public Utilities Commission, jurisdiction over the activities of another statutory creature, to-wit: a duly chartered municipality, which is a distinct governmental unit, unless the law unmistakably so provides.
As heretofore stated, the City of St. Petersburg, by its charter, Chapter 15505, Special Acts of Florida 1931, was given the right to operate utilities including a transportation system within and without the limits of the city and was likewise given the power to establish rates and charges for such utilities. We have consistently held that a special grant of power or a special act of the legislature takes precedence over a general grant or law on the same subject. Sullivan v. City of Tampa, 101 Fla. 298,134 So. 211, and City of Apalachicola v. State, 93 Fla. 921,112 So. 618.
The construction placed actually or by conduct upon a statute by an administrative board or commission is, of course, not binding upon the courts. However, it is often persuasive and great weight should be given it. Some significance must be attached to the fact that this is the first instance which has come to our attention wherein the Florida Railroad and Public Utilities Commission has attempted to assert jurisdiction by regulating the operation of a municipally owned street railway system or of a single line of that system, as is apparently the case here. Furthermore, the record before us does not show that any application for a certificate of public necessity and convenience was ever filed or required, by the Florida Railroad and Public Utilities Commission, to be filed. The transportation system of the City of St. Petersburg has been operated by said city for a period of thirty years. During all these years many changes have been made in rates, schedules and routes, all without application for approval by the Florida Railroad and Public Utilities Commission or any suggestion that such changes should have been so approved.
It is our conclusion that the petition for writ of certiorari should be granted and the order sought to be reviewed should be quashed. It is so ordered.
ADAMS, C.J., and TERRELL, CHAPMAN, THOMAS, SEBRING, and BARNS, JJ., concur. *Page 807