Mr. William H. Lindner Secretary Department of Management Services 2737 Centerview Drive, Knight Building Tallahassee, Florida 32399-0950
Dear Secretary Lindner:
As Chairman of the Correctional Privatization Commission, you have asked for my opinion on substantially the following question:
Does s. 40, Ch. 93-406, Laws of Florida, enacted as s. 957.03(3)(e), F.S., prohibit the Correctional Privatization Commission from contracting with the Florida Center for Public Management for the services of an executive director if the center has provided consultant services to the Department of Corrections within the past two years?
In sum:
The Correctional Privatization Commission may retain a governmental entity, such as the Florida Center for Public Management, to provide executive director services without violating the provisions of s. 957.03(3)(e), F.S. 1993.
According to your letter, the Correctional Privatization Commission (the commission) is considering contracting with the Florida Center for Public Management (the center) for the services of an executive director. The center is a part of the Florida State University system. You have advised us that on June 10, 1992, the Department of Corrections entered into a contract with the center to provide services and training[1] and this contract is currently in effect. The commission is concerned that the consulting work the center has done for the Department of Corrections would preclude it from consideration pursuant to s. 957.03(3)(e), F.S. 1993.[2] The "Correctional Privatization Commission Act," Ch. 957, F.S. 1993, was created by s. 40, Ch. 93-406, Laws of Florida. The Legislature created the commission for the purpose of "enter[ing] into contracts with contractors for the designing, financing, acquiring, leasing, constructing, and operation of private correctional facilities."[3] The act mandates an expedited process for construction of the first two private correctional facilities for fiscal year 93-94.[4]
The commission is made up of five members who are appointed by the Governor.[5] The statute provides that:
[N]one of [the commissioners] may be an employee of the Department of Corrections, one . . . must be a minority person . . . , and four . . . must be employed by the private sector. A commissioner may not have been an employee or a contract vendor of or a consultant to the department, or an employee or a contract vendor of or a consultant to a bidder, for 2 years prior to appointment to the commission and may not become an employee or a contract vendor of or a consultant to the department, or an employee or a contract vendor of or a consultant to a bidder, for 2 years following the termination of the appointment to the commission.[6]
The commission is authorized to employ an executive director and the staff which is necessary to carry out the legislative direction. Further, [t]he commission may retain such consultants as it deems necessary to accomplish its mission. Neither the executive director nor any consultant retained by the commission may have been an employee or a contract vendor of or a consultant to the department, or an employee or a contract vendor of or a consultant to a bidder, for 2 years prior to employment with the commission and may not become an employee or a contract vendor of or a consultant to the department, or an employee of a contract vendor of or a consultant to a bidder, for 2 years following termination of employment with the commission.
Thus, the Legislature expressly excluded persons with business connections to the Department of Corrections from serving as a commissioner, executive director, or a consultant to the Correctional Privatization Commission within a two year period. The range of prohibited business relationships with the Department of Corrections appears to be extensive and applies to employees, contract vendors, and consultants to the department and also to employees, contract vendors, or consultants to bidders with the department.
However, it is the rule that statutory provisions which are written in general language making it reasonable to interpret them as applicable to both the government and to private parties are subject to a presumptive rule of construction which exempts the government from their operation unless evidence exists to the contrary.[7] Section 957.03(3)(e), F.S. 1993, makes no distinction between public or private employees, contract vendors, or consultants to the Department of Corrections. Thus, applying the foregoing rule of statutory construction, state agencies do not fall within the scope of the statute.
In light of the general language of the statute relating to the retention of an executive director by the Correctional Privatization Commission, and in the absence of a specific provision making this statute applicable to state agencies, it is my opinion that the terms of s. 957.03(3)(e), F.S. 1993, would not prohibit the commission from contracting with the Florida Center for Public Management for executive director services.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] My review of the contract between the Florida Center for Public Management and the Florida Department of Corrections indicates that it is an agreement for professional services in which the center is to act as consultant and assist in such activities as drafting legislation, reviewing and making recommendations to strategic and operational plans of the department, developing computerized systems and providing certain management training. See, Letter of Agreement Amendment #3, dated March 8, 1993, between the Florida Center for Public Management and Florida Department of Corrections.
[2] Section 40, Ch. 93-406, Laws of Florida, created Ch. 957, F.S. (1993), and citations to the statutory sections will be used herein to avoid confusion.
[3] Section 957.03(1), F.S. (1993). And see, s. 957.03(4)(a), F.S. (1993), which provides that "[t]he commission shall enter into a contract or contracts with one contractor per facility for the designing, acquiring, financing, leasing, constructing, and operating of that facility."
[4] Section 41, Ch. 93-406, Laws of Florida.
[5] Section 957.01(2), F.S. (1993).
[6] Section 957.03(2), F.S. (1993).
[7] See generally, 3 Sutherland Statutory Construction s. 62.01 (4th ed., 1974); 82 C.J.S. Statutes s. 317. And see, City of St. Petersburg v. Carter, 39 So.2d 804 (Fla. 1949) (the term "corporation" in a statute does not ordinarily include municipal corporations, and the term "persons" in a statute does not ordinarily include municipal corporations, unless they are expressly included by apt words or unless a clear legislative intent that they be included is expressed in the context); State v. Gordon Brothers Concrete, Inc., 339 So.2d 156 (2 D.C.A. Fla., 1976) (garnishment statute did not provide statutory authority for waiver of state's immunity in garnishment proceeding); AGO's 80-100, 80-68, 75-170, and 74-261.