HOLT, Associate Justice.
The lower court entered the following final decree from which this appeal is taken.
“The above and foregoing cause having come on for final hearing on the date and at the time and place set forth in the order to show cause heretofpre issued by this Court and in the notice addressed to The State of Florida and the several property owners, taxpayers, citizens and others having or claiming any right, title or interest in property to be affected by the issuance by the County of Seminole, Florida, of Hospital Bonds hereinafter more particularly described or to be affected in any way thereby, and as heretofore issued against the State of Florida on petition of said County, and Murray W. Overstreet, Esq., State Attorney, having filed an answer herein, and said cause having duly come on for final 'hearing, and the Court having considered the same and heard the evidence and being fully advised in the premises, finds as follows:
“First: That the County of Seminole, Florida, is a political subdivision of said State, created, organized and operated under the Constitution and Laws of the State of Florida.
“Second: That authority is conferred upon said County by the Constitution and Laws of the State of Florida, including Chapter 155, Florida Statutes [F.S.A.], to issue Hospital Bonds for said County for the purpose of constructing and equipping a public hospital for the County.
“Third: That the constructing and equipping of said public hospital to be financed by the issuance of said Hospital Bonds, is imperative in order to preserve the public health and safety of the citizens of the County of Seminole, and it is essential to the physical and economic necessities of said County that such public hospital shall be constructed and equipped as provided in the petition herein.
“Fourth: That the issuance of said $800,000 Hospital Bonds was duly approved by the qualified electors who are freeholders residing in said County at an election held on November 4, 1952, in the manner provided in the Constitution and Statutes of Florida [F.S.A.].
“Fifth: That pursuant to the Constitution and Statutes of the State of Florida, including particularly said Chapter 155, Florida Statutes [F.S.A.], the bond election, at which the qualified electors who were freeholders residing in the County authorized the issuance of said Hospital Bonds, was duly, legally and properly called and held at a general election in said County.
“Sixth: That pursuant to said election and in accordance with the provisions of Chapter 155, Florida Statutes [F.S.A.], and other applicable provisions of law, the Board of County Commissioners of said County did by resolution duly and legally adopted on April 7th, 1953, authorize and provide for the issuance of interest bearing Hospital Bonds of said County in the aggregate amount of $800,000 to be dated June 1, 1953, in the denomination of $1,000 each, numbered from 1 to 800, inclusive, maturing as 'hereinafter set forth, bearing interest at such rate not exceeding five (5) per centum per annum as may be obtained upon the sale thereof, for the purpose of paying the cost of the constructing and equipping a public hospital for said County, all of which is more fully set forth in the certified copy of proceedings of the Board of County Commissioners of Seminole County and the certified copy of said resolution heretofore filed herein.
“Seventh: That prior to- the adoption of said resolution by the Board of County Commissioners of Seminole County and pursuant to the provisions of Section 155.14, Florida Statutes [F.S.A.], the Board of Hospital Trustees of the County of Seminole, Florida, On the 6th day of April, 1953, adopted a resolution finding and determining that the amount of bonds necessary to be issued by the County of Seminole to finance the constructing and equip *246 ping of said public hospital is the principal sum of $800,000 and directing that a certified copy of said resolution be forwarded by the Secretary of the Board of Trustees to the Board of County Commissioners of Seminole County, as and for the certificate of said Board of Trustees, required by said Section 155.14, Florida Statutes [F.S.A.].
“Eighth: That the Petitioner is authorized to, and said resolution provides for, the levy in each year as long as any of the Hospital Bonds are outstanding and unpaid, and an ad valorem tax on all taxable property within the County of Seminole in the amount of three mills on the dollar, which based on the assessed valuation of all taxable property in said County for the year 1952, would have yielded the sum of Sixty Eight Thousand Two Hundred Forty-Two & 93/100 Dollars ($68,242.93) in the year 1952 or the levy of an ad valo-rem tax of such higher rates or millage as shall be sufficient to yield in each such year not less than the said sum of Sixty Eight Thousand Two Hundred Forty Two & 93/100 Dollars ($68,242.93). '
“Ninth: That the Petitioner has the power to, and said resolution provides for, the payment of various premiums over and above par and accrued interest as the redemption price of the redeemable Hospital Bonds and the provision in said resolution for the payment of the various premiums is in all respects authorized, legal and valid.
“Tenth: That the Petitioner has the power to, and said resolution provides that, the payment of the principal of and interest on the Hospital Bonds shall be a first, prior and paramount lien on all moneys in the Sinking Fund, such moneys being the full proceeds derived from the levy and collection of the three mill tax or the higher rate or millage provided for in the resolution.
“Eleventh: That the Petitioner has the power to, and said resolution provides that, in the event for any reason the three mill tax or such higher rate or millage levied and collected in any year shall be insufficient to make all required debt service and reserve payments required by the resolution, the holders of the bonds shall have a first, prior and paramount lien on the proceeds of all taxes levied and collected by the County of Seminole pursuant to the provisions of Section 155.12, Florida Statutes [F.S.A.].
“Twelfth: That the said Flospital Bonds are of the character and the said proceedings preliminary to the issuance thereof are of the nature as entitled the Petitioner herein to proceed 'under the provisions of Chapter 75, Florida Statutes, 1951, as amended [F.S.A.], for the purpose of having the right of said County to issue said Hospital Bonds determined.
“Thirteenth: That the issuance of said $800,000 Hospital Bonds, will not violate any provisions of Chapter 155, Florida Statutes [F.S.A.], and will be within all debt limitations prescribed by the Constitution and laws of the State of Florida.
“Fourteenth: That due and proper notice addressed to The State of Florida, and' the several property owners, taxpayers, citizens and others having or claiming any right, title or interest in property to be affected by the issuance by the County of Seminole, Florida, of the Hospital Bonds hereinbefore described, was duly published by the Clerk of this Court in a newspaper published and of general circulation in said Seminole County, Florida, once each week for three consecutive weeks, and the first publication being at least eighteen days prior to the date of said hearing, as required by law; all as will more fully appear from the affidavit of the Publisher of The Sanford Herald heretofore herein, filed.
“Fifteenth: That no. taxpayer, citizen or other person has intervened or made application to become a party to said proceedings for the purpose of interposing objections to the granting of the prayer as set forth in said petition as provided by law.
“Sixteenth: That the answer of the State Attorney for and on behalf of the State of Florida shows no cause why the *247 prayer oí the petition should not be granted and discloses no irregularity or illegality in the proceedings set forth in said petition, and the objections contained in said answer be and the same are hereby overruled and dismissed.
“Seventeenth: That this Court has found that all requirements of the Constitution and Laws of the State of Florida pertaining to the enabling act and proceedings in the above entitled matter have been strictly followed :
“■Now, Therefore, It Is Ordered, Adjudged And Decreed that the issuance of Hospital Bonds of the County of Seminole, Florida, in the sum of $800,000 dated June 1, 1953, in the denomination of $1,000 each, numbered consecutively from 1 to 800, inclusive, maturing on June 1 of each year as follows:
Year Amount Year_ Amount
1957 $17,000 1971 $29,000
1958 18,000 1972 31,000
1959 18,000 1973 32,000
1960 19,000 1974 33,000
1961 20,000 1975 35,000
1962 21,000 1976 36,000
1963 22,000 1977 37,000
1964 22,000 1978 39,000
1965 23,000 1979 40,000
1966 24,000 1980 42,000
1967 25,000 1981 44,000
1968 26,000 1982 45,000
1969 27,000 1983 47,000
1970 28,000
bearing interest at such rate not exceeding five (5) per centum (5%) per annum as may be obtained on the sale thereof, principal and semi-annual interest (June 1 and December 1), payable at The Hanover Bank, 70 Broadway, New York, New York, callable as provided in said resolution, is for a proper legal, corporate purpose and is fully authorized by law, and that said Hospital Bonds and each of them to be issued as aforesaid. and all proceedings incident hereto are hereby validated and confirmed. Said Hospital Bonds are to be issued for constructing and equipping a public hospital in and for said County, and as and when so issued will be payable from ad valorem taxes levied on all taxable property in said County in the manner and under the terms and conditions contained in the resolution authorizing said Hospital Bonds, adopted by the Board of County Commissioners of said County on the 7th day of April, 1953.
“That the Clerk of this Court be and he is held by directed to sign a certificate on the back of each of said Hospital Bonds to the effect that said Hospital Bonds have been validated and confirmed by decree of this Court, and said Clerk is hereby further directed to affix the seal of said Court to such certificate on each of said bonds, provided such certificate shall not be so signed and sealed within twenty (20) days after the date of this decree and unless no appeal or bill of exceptions be filed in this cause.”
Appellant, the State Attorney for the Ninth Judicial, pursuant to the obligations of his office and his duties with respect thereto, attacks the foregoing decrea of validation, asks that it be reversed and poses five questions in the process, most of which contained no merit, and at their best consist chiefly of hypertechnical matters so refined that sometimes it is difficult to follow the basis of the reasoning employed. It would serve no useful purpose to pinpoint by pinpoint laboriously answer each argument, nor would such a discussion here add anything to the judicial lore of the State of Florida.
The qualified electors of Seminole County in an election called for that puipose lawfully voted approval of a bond issue in the sum of $800,000, for the construction and establishment of a public hospital which was and is sorely needed. The Board of County Commissioners passed the necessary resolutions as set forth in the final decree, supra (which need not be set forth in detail here), all of which were fully approved, including the election and its results by the learned Judge below.
It may be (although we do not so hold) that there were certain technical matters in the resolutions of the County Commission and the provisions of the proposed *248 bonds, which conflict to some extent with Section 155.04 of Chapter 155 of Florida Statutes Annotated, but such if any there be, do not in any wise invalidate the issue, nor any of the proceedings which gave it birth, and we so find and declare. Chapter 155 (155.01-155.24) embraces the complete subject of County Hospitals.
If there be some who. still insist that such is not the situation, then complete answer to all criticism of that nature is the enactment and passage by the Legislature of Florida at its regular session of 1953 (just ended) of Senate Bill No. 655, Laws of Florida 1953 which became a law without the Governor’s approval and was filed in the office of the Secretary of State on May 27, 1953, now known as Chapter 29533, Laws of Florida, 1953.
This special bill effectually cured any defect which may have been present in the general legislation and the actions of the petitioner County pursuant thereto.. This act specifically ratifies, approves and confirms the very bond issue here under discussion and legally corrects any misstep that may have occurred originally.
We have on occasions too numerous to mention held that other factors being equal, a special grant of power or a special act of the Legislature takes precedence over a general grant or law on the same subject. Moreover, whenever possible the two pieces of legislation are to- be reconciled rather than be held in conflict. See City of St. Petersburg v. Carter, Fla., 39 So.2d 804, and authorities therein cited.
As further support of this principle (if such be needed), and in recognition of it by the Legislative Branch, Section 104.44,. Florida Statutes Annotated, was enacted by the Legislature in 1951 and provides: “All local laws that conflict with the election code of 1951 shall stand repealed after-January 1, 1954.”
We conclude therefore that (1) that the so-called irregularities complained of by appellant in these validation proceeding? (if any there be) do not in our opinion affect the same, and (2) if such technicalities could in some strained fashion and construction said to be applicable, and thus tend to adversely invalidate these humanitarian bonds, then and in that event the enactment of special act Senate Bill 655, Chapter 29533, Laws of Florida 1953, supra, on this particular bond issue in question takes precedence over the general law on the subject involved and should and will be enforced, and it is so ordered.
Affirmed.
ROBERTS, C. J., and TERRELL and MATHEWS, JJ., concur.