BARNS, PAUL D., Justice (Ret.):
This is an appeal from a final decree validating proceedings, brought on behalf of Special School District Number One of Broward County, to issue refunding bonds in the amount of $12,350,000. We fail to find error and affirm.
Of the $12,350,000 proposed to be refunded $8,655,000 maturing from 1967 to 1976 bear interest at 4% and $3,695,000 bear interest at Zl/2%. It is proposed that the Refunding Bonds shall have maturities as of the same dates and in the same amounts as do the Outstanding Bonds 1956 bonds to be refunded. The Outstanding Bonds to be refunded were approved by the freeholders of the District at a bond election and the full faith, credit and taxing power of the District is pledged for the payment of the principal and interest on the 1956 Outstanding Bonds.
RÉSUMÉ OF REFUNDING PLAN
$14,915,000 principal amount of the 1956 Bonds are now outstanding and unpaid; the original amount was $18,500,000. The aggregate principal amount of $12,350,000 of the 1956 Bonds maturing June 1, 1967, and thereafter are subject to redemption, in whole, prior to their respective maturities on June 1, 1966, at the price of par and accrued interest, plus a premium of two per centum (2%) of the principal amount thereof. The District now seeks to validate $12,350,000 of Refunding Bonds to refund an equal amount of the 1956 General Obligation Bonds which are subject to redemption prior to their maturity in order to take advantage of the existing favorable market conditions and the prevailing low interest rates and thereby effect a saving to the District and the taxpayers thereof. The issuance of the Refunding Bonds has not been approved by the freeholders of the District at a bond election. It is conceded that under existing market conditions, the Refunding Bonds should be sold at a lower interest rate which would effect a substantial savings to the District and the Taxpayers thereof.
Richard K. Jones of Bache and Company, the fiscal agent, testified that the outstanding bonds bear an average interest rate of 3.875 and, based on present conditions, the Board should bfe able to sell the Refunding Bonds at an interest rate of approximately three and one-fourth (3;4%) per cent, requiring the bidders to pay a premium of 1021/£. In his opinion, based on the difference between the 3}4% interest rate on the Refunding Bonds and the 3.875 average interest rate on the 1956 Outstanding Bonds from June 1, 1966, to the final maturity plus the difference between the yield of government bonds which were then selling to yield 3.95 per cent and the interest paid on the Refunding Bonds until the redemption date of June 1, 1966, would result in an interest saving of approximately $700,000.
Under the financing plan developed by the District, it is proposed that Refunding Bonds in the principal amount of $12,350,-000 be issued and sold to refund an equal principal amount of the outstanding 1956 Bonds that are callable prior to their respective maturities. The bidders will be required to bid for the bonds at par plus a premium of not less than 102.5 for the bonds. The par amount of the issue will be sufficient to pay the principal of the outstanding 1956 Bonds which will be callable on June 1, 1966, at the price of par plus a premium of two per centum (2%) of the principal amount thereof. The premium *8 bid will be sufficient to pay the redemption premium on the 1956 Bonds in the amount of two per centum (2%) and all expenses in connection with the issuance and sale of the Refunding Bonds, including the fiscal agent’s fee, in the amount of one-half of one per centum (.5%).
If a bid is received for the Refunding Bonds at a lower net interest cost rate that would effect a substantial saving, the Refunding Bonds would be sold and an amount equal to the par value of the bonds sold plus a premium in the amount of two per centum (2%) would be deposited from the proceeds derived from the sale of the bonds in a Redemption Trust Fund in an irrevocable trust to pay the cost of redeeming the outstanding 1956 Bonds subject to redemption on June 1, 1966, and the applicable redemption premium in the amount of two per centum (2%). The monies in the Redemption Trust Fund would be immediately invested in or secured by direct obligations of the United States Government maturing not later than June 1, 1966, the call date, at an interest rate or rates higher than the interest rate received on the outstanding bonds.
The earnings on the investment of the Redemption Trust Fund will be used to pay the interest on the refunding bonds proposed to be issued as the same becomes due and payable until the 1956 Bonds have been redeemed or provision for the redemption thereof in full has been made. The amount of the earnings from the investment of the Redemption Trust Fund, in excess of that required to pay the interest on the refunding bonds proposed to be issued shall, in each year, be deposited in the Sinking Fund of the 1956 Bonds and result in a corresponding reduction in the amount of ad valorem taxes of the District required to pay the principal of and interest on the 1956 Bonds for that year.
Only after sufficient funds have been deposited with the paying bank to redeem and retire all outstanding 1956 Bonds, including the principal amount thereof, the interest thereon, the applicable premium, and expenses in connection therewith, do the Refunding Bonds proposed to be issued become general obligations of the District and the full faith, credit, and taxing power of the District be irrevocably pledged for the payment of the principal and interest on such Refunding Bonds to the same extent and with the same force and effect as the same is now pledged for payment of the 1956 Bonds to be refunded.
Appellants present two points for reversal, to-wit:
POINT ONE
ARE THE BONDS PROPOSED TO BE ISSUED “REFUNDING BONDS” WITHIN THE MEANING OF SECTION 6, ARTICLE IX, OF THE CONSTITUTION OF FLORIDA.
POINT TWO
DOES THE ISSUANCE OF “REFUNDING BONDS” PRIOR TO JUNE 1, 1966, TFIE REDEMPTION DATE OF THE BONDS SOUGHT TO BE REFUNDED, INCREASE THE TAX BURDEN OF THE TAXPAYERS OF THE DISTRICT OR RESULT IN A DOUBLE INDEBTEDNESS WITHOUT THE PRIOR APPROVAL OF AN ELECTION OF FREEHOLDERS IN VIOLATION OF SECTION 6, ARTICLE IX, OF THE CONSTITUTION OF FLORIDA.
The Resolution of the School Board requires that the Refunding Bonds be sold at public auction at a price of not less than 1021^% of par value and accrued interest and that the proceeds derived from the sale of the Bonds are required to be applied as follows:
(1) All accrued interest shall be deposited in the Sinking Fund of the District.
*9 (2) An amount equal to one-half of one per centum of the par value of such Bonds shall be paid to Bache & Company for their services as financial consultant.
(3) Any amount in excess of 10214% of par value of the Bonds shall be set aside and deposited by the District into a special fund designated “Refunding Expense Account.”
(4) The balance of the proceeds shall be deposited with the Trustee in a special trust fund established as the “Bond Redemption Fund” which shall be a sum not less than $12,597,000; the “Bond Redemption Fund” is dedicated to the redemption of the Outstanding Bonds on June 1, 1966, which are to be called as of that date, having a par value of $12,350,000, at 2% call premium; and
(5) The “Bond Redemption Fund” is to be administered by a Trustee pursuant to an Escrow Deposit Agreement to be entered into between the Board and the Trustee.
The School Board’s Resolution authorizing the Refunding Bonds provides that, until the Outstanding Bonds are redeemed, moneys in the Bond Redemption Fund shall be invested by the Trustee as follows:
“Moneys on deposit in the Bond Redemption Fund shall be invested and reinvested by the Trustee in direct obligations of the United States of America or in time deposits evidenced by certificates of deposit maturing not later than June 1, 1966. All moneys on deposit in the Bond Redemption Fund and the Refunding Expense Fund, including time deposits shall be continuously and fully secured with direct obligations of the United States of America having a market value (excluding accrued interest) of not less than the amount of such moneys and time deposits. The interest (exclusive of the amount of interest applicable to amortization of premiums, accrued interest and expenses incurred upon making such investments) to be received from such investments must equal not less than the amount of interest to become due and payable on the Bonds from the date of delivery thereof to June 1, 1966. Until applied to the retirement of the Outstanding Bonds, all moneys, United States Obligations or Certificates of Deposit at any time in the Bond Redemption Fund are to be held in trust for and are hereby pledged to the payment and security equally and ratably for, the payment of the principal of and interest on the Bonds, all as herein provided
The School Board’s refunding resolution further provides that the income from the investments of the Bond Redemption Fund shall be applied by the Trustee and in the priority as follows:
“C. The trustee shall receive or collect the interest or income resulting from such investments, together with any other moneys received or collected with respect to such investments and shall apply or transmit t® the. Board such interest or income for application in the following manner and order of priority:
“(1) For deposit in the Sinking Fund the amounts necessary to meet the current installment of interest falling due on the Bonds.
“(2) For accumulation in the Bond Redemption Fund of the amount necessary to amortize the premium, accrued interest and expenses paid upon the purchase of any United States Obligations.
“(3) The balance of such interest or income shall be deposited in the Sinking Fund created pursuant to the 1956 Resolution for the benefit of the 1956 Bonds. The amount of the annual tax levy required to pay the priu- *10 cipal of and interest on the 1956 Bonds shall be reduced proportionately in the year immediately following- any such deposit.’'
As to the relative status of the 1956 Outstanding Bonds and the Refunding Bonds, the pledge of the taxing power and the security of the purchasers of the Refunding Bonds, until the redemption of the 1956 Bonds is accomplished, the Board’s Resolution provides:
“The pledge of the full faith, credit and taxing power of the District for the payment of the principal of and interest on the Outstanding Bonds made by the District pursuant to the 1956 Resolution shall continue to be valid and binding until the retirement of the Outstanding Bonds. However, immediately upon such retirement of the Outstanding Bonds, the pledge by the District of its full faith, credit and taxing power for the payment of the principal of and interest on the Bonds shall attach and become effective without any further act or proceeding of the Board.”
The Board’s Resolution furthermore provides :
“Nothing in this Resolution shall be construed as authorizing, permitting or requiring the District to levy ad valorem taxes for the payment of the principal of and interest on the (Refunding) Bonds prior to the redemption of the Outstanding Bonds as provided in this Resolution.”
Section 6 of Article IX of the Constitution of Florida, F.S.A. provides:
“Sec. 6. The Legislature shall have power to provide for issuing State bonds only for the purpose of repelling invasion or suppressing insurrection, and the Counties, Districts, or Municipalities of the State of Florida shall have power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such Counties, Districts, or Municipalities shall participate, to be held in the manner to be prescribed by law; but the provisions of this act shall not apply to the refunding of bonds issued exclusively for the purpose of refunding of the bonds or the interest thereon of such Counties, Districts, or Municipalities. As amended general election Nov. 4, 1930.” (Emphasis supplied)
Chapter 132, Florida Statutes, F.S.A., the General Refunding Law, authorizes each County, city, town, special road and bridge district, special tax district, and other taxing districts of the state to issue refunding bonds without the approval of such bonds at an election, except as may be required by the Constitution of Florida, for the purpose of refunding any outstanding bonds. Section 132.09 of that chapter specifically authorizes the public sale of refunding bonds in addition to the authority contained for the exchange of bonds. Section 132.28, Florida Statutes, F.S.A., provides that the provisions of the chapter are applicable to any school district legally authorized to issue refunding bonds. With respect to the notice of sale of the refunding bonds, Section 132.09, Florida Statutes, F.S.A., provides that “The notice of sale may require the bidders to fix the interest rate or rates that the bonds are to bear subject to the terms of the notice and the maximum rate permitted by this chapter.” and further that “The right to reject all bids shall be reserved to the governing body of the unit.”
That the mere issuance of general obligation refunding bond creates no new indebtedness was settled by this Court in the case of Davis v. Dixon, 1929, 98 Fla. 87, 123 So. 536. The language used in the opinion of Mr. Justice Strum in that case and which was quoted by this Court in State v. City of Okeechobee, 1930, 99 Fla. *11 617, 127 So. 339, and later in Sullivan v. City of Tampa, 1931, 101 Fla. 298, 134 So. 211, is as follows:
“We are aware of the well-nigh universal general rule that, even where a constitutional provision requires a vote of the electors to originally authorize the incurring of an indebtedness, or the original issuance of bonds, no such election is necessary to the issuance of refunding bonds pursuant to statute for the purpose of discharging outstanding bonds originally issued in accordance with the constitutional requirement, so long as the refunding bonds create no additional or increased liability on the part of the obligor, unless, of course, the statutory or other authority under which the refunding bonds are issued requires a resubmission to the electorate. The theory of the cases so holding is that, since the bonds are not the debt itself, but the legal evidence of the existence of the debt, the issuance of refunding bonds for the purpose of discharging an existing legal indebtedness, originally incurred in accordance with the constitutional requirement, does not create a new debt or impose any new liability against the taxpayers or their property within the meaning of such constitutional provision, but merely renews and continues in a changed form the original existing indebtedness which was originally created in conformity with the Constitution, and that such constitutional provision therefore does not prohibit the renewal, without a vote, of the previously existing valid debt, so long as no additional or increased liability is created. * * * ”
In the case of Fleeman v. City of Jacksonville, et al., 1939, 140 Fla. 478, 191 So. 840, the City of Jacksonville proposed to issue and sell general obligation refunding bonds to refund outstanding general obligation bonds. There was no provision for the simultaneous cancellation of the bonds sought to be refunded but the Resolution authorizing the issuance of the refunding bonds provided that the proceeds should be kept in a separate account to be used only for the purpose of paying the bonds sought to be refunded. (The intervenors contended that the refunding bonds .were violative of Section 6, Article IX of the Constitution of Florida.) The Court disposed of that contention saying:
“It is next contended that the refunding bonds are violative of Section Six, Article Nine of the Constitution, because the petition for validation shows on its face that petitioner proposes to issue the refunding bonds without provision for simultaneous cancellation of the bonds sought to be refunded.
« íjí
“(2) In the very nature of the transaction, it would generally be impracticable to provide for cancellation of the outstanding bonds simultaneously with the issue of the refunding bonds. The outstanding bonds mature on fixed dates and the law contemplates that the proceeds of the refunding will be at the place of payment to take the place of principal and interest of the outstanding bonds when they mature. All this should be done as expeditiously as circumstances will permit but the fact that there is a reasonable lapse between the maturity of the outstanding bonds and the issue of the refunding bonds in no sense increases the indebtedness or makes outstanding both sets of bonds at the same time. In a business transaction of this kind and running over the period required, it is hardly reasonable to expect that every element in chronology will synchronize.”
This Court has approved advance re-fundings of revenue bonds whereby all of the money to which the holder of the refunding bonds would be entitled to receive by way of principal, redemption premium, and interest to the first call date is irrev *12 ocably deposited in trust. This Court held that under such circumstances the lien on the pledged sources of payment is discharged at the time of the deposit. The first case involving this question was that of State v. City of Orlando, Fla.1955, 82 So.2d 874, 875. In that case this Court approved revenue refunding bonds issued in two series. The first series refunded an outstanding revenue issue. The second financed the cost of extension of improvements to the existing sewer system. The bonds were dated April 1, 19SS, and the first call date of the outstanding bonds was April 1, 1958. It was contemplated that the proceeds of the first series would be invested in United States Government bonds until the first date of prior redemption. In answer to the objections of the respondents, State of Florida, this Court said:
“(1) The state contends that such self-imposed restraint in impounding the fund amounts to unsound fiscal management and will ‘result in 2i4 years of double indebtedness for a single purpose.’ We cannot agree. The trust fund may be invested in obligations of the United States which would, of course, yield interest and, besides, there was testimony before the judge that all the bonds could be sold at a lower rate of interest because by the whole plan all of them would at once be secured by a first lien and any question of relative dignity between the old bonds and the new would be eliminated.”
CONCLUSION
The Resolution authorizing the issuance of the Refunding Bonds requires that the proceeds of the sale of the bonds be invested in direct obligations of the United States Government or in time deposits evidenced by certificates of deposit fully secured by direct obligations of the United States Government at a rate or rates at least equal to the interest payable on the Refunding Bonds. There is no obligation on the Board or the taxpayers to pay any interest on the Refunding Bonds until the 1956 Bonds have been called and retired.
The Resolution authorizing the issuance of the Refunding Bonds and the testimony of the witnesses demonstrates that the issuance of the Refunding Bonds without an immediate redemption of the Outstanding 1956 Bonds does not result in a double indebtedness or an increased burden on the taxpayers of the District. Not until all of the 1956 Bonds, including interest thereon, have been paid or redeemed on June 1, 1966, does the taxing power of the District become pledged for the payment of principal of and interest on the Refunding Bonds. Until the retirement of the 1956 Bonds, the holders of the Refunding Bonds must look solely to the Redemption Trust Fund and earnings thereon for the payment of the principal of and interest on the Refunding Bonds until the Redemption Trust Fund is applied to the retirement of the 1956 Bonds. The obligation of the taxpayers for the payment of the 1956 Bonds must be terminated by their retirement before any obligation attaches and the taxing power of the District is pledged to the payment of the principal of and the interest on the Refunding Bonds. The Redemption Trust Fund, including the earnings thereon, is available to pay the principal of and interest on the Refunding Bonds, if for any reason the 1956 Bonds are not paid and redeemed. The proposed plan does not create a double indebtedness or additional burden on the taxpayers of the District under any circumstances.
The decree appealed is affirmed.
DREW, C. J., and ROBERTS, THOR-NAL and O’CONNELL, JJ., concur.