THOMAS, Justice.
The Board of Public Instruction of Lake County on behalf of Special Tax School' District Number One petitioned the circuit Judges of the Fifth Judicial Circuit to validate $4,620,000 in School Refunding Bonds, Series of 1965, to refund outstanding bonds in an identical amount, callable-before maturity.
The procedural prerequisites were-meticulously observed and in response to the required statutory notice no one protested the issuance of the bonds, and no-one appeared in the validating proceeding except the State Attorney of the Circuit *215 who filed an answer raising certain objections we will elaborate as we consider the •issues presented on appeal.
The proceeding for validation culminated in a decree detailing the steps that had been taken toward the issuance of the bonds and unconditionally validating and ■confirming the procedure as well as the instruments themselves.
The first question presented here is a •challenge of the character of the proposed bonds. The State Attorney prefaces his ■assault with a reference to Sec. 6, Art. IX, of the Constitution, F.S.A. empowering the legislature to issue bonds for certain purposes and only after approval by the •electorate. The proviso in the constitutional restriction, he asserts, has not been ■observed. It is that the provisions shall not apply to “refunding of bonds issued ■exclusively for the purpose of refunding •of the bonds or the interest thereon of ■such Counties, Districts, or Municipalities” mentioned earlier in the section.
It is his position that by this lan.guage only an actual exchange of the old bonds for the new is permissible and that a •sale of the latter would during the period required between the sale and the redemption amount to an increase of an indebtedness without approval of the voters in violation of the constitutional inhibition. He cites in support of his argument the decision of the Supreme Court of the United States rendered in 1892 in the case of District Township of Doon v. Cummins, 142 U.S. 366, 12 S.Ct. 220, 35 L.Ed. 1044, which bears out his contention, but a dissenting opinion was filed by three members of the court and the logic of the dis•senters is to us more appealing. Moreover, the Supreme Court of Florida, in the case of State v. Board of Public Instruction of Broward County, 164 So.2d ■6, has ruled to the contrary, so we reject appellants’ contention and reiterate that the sale of refunding bonds earmarked for the retirement of outstanding obligations does not necessarily, just in the transition period, constitute an increase in overall indebtedness in violation of Constitutional limitations.
Appellants’ second question is akin to the first: “Does the issuance of ‘refunding bonds’ without providing for the prior redemption of the bonds sought to be refunded, increase the tax burden of the taxpayers of the district or result in a double indebtedness without prior approval at an election of freeholders in violation of Section 6, Article IX, of the Constitution of Florida?” To answer it understandably requires a more detailed description of the plan of financing revealed by the record in the case.
The plan is much the same as the one under scrutiny in State v. Board of Public Instruction of Broward County, supra. There the outstanding bonds were to be redeemed at the earliest callable date; here the old bonds will not be redeemed until maturity and are first subject to redemption 1 July 1969 at a premium of four per cent. Obviously the scheme is intended to save the taxpayers the difference between the interest on the old and new bonds, in the amount of $150,000. And, in addition, to secure to them the interest on the government securities amounting to $30,000. It is proposed eventually to retire old bonds in the precise amount of the total of the refunding bonds. But outstanding bonds maturing in 1965 and 1966 together with interest on all the old bonds to 1 July 1966 will be paid by ad valorem taxation.
The proceeds from the refunding issue less accrued interest and the cost of refunding will be irrevocably deposited in an escrow fund which will be invested in bank certificates of deposit of an aggregate amount sufficient to pay (1) interest on the refunding bonds to 1 July 1966, (2) principal of the original bonds maturing 1 July 1967 and afterward, and (3) all interest on the old bonds “for the period from July 1, 1966” to quote from appellee’s brief. These certificates of deposit are to be continuously secured by “United States *216 obligations having at all times a market value equal to the face amount of such certificates of deposit.” Whereas the old bonds maturing in 1965 and 1966 together with interest on all of them to 1 July 1966 will be paid from taxes, the interest on the new bonds to 1 July 1966 will be paid from maturing certificates of deposit. After that date the first bonds and interest on them will be payable from maturing certificates of deposit.
The appellee’s comment in his brief that “[s]ince the old bondholders will be fully secured in the manner [just] * * * stated there can be no question as to the existence of an increased burden on the taxing power of the District on July 1, 1966” — a year hence, further that “[a]t that time the sole pledge of the taxing power of the District will be for the debt service for the refunding bonds.”
The appellee tells us “[b]y way of comment, it may be useful to explain that the old bonds maturing in 1965 and 1966 were not included in this plan of refunding because their coupon rate was so high that the earnings reflected in the certificates of deposit would not be sufficient to cover them.”
That the rights of original bond holders have been carefully secured, as appellee asserts, we are inclined to agree, and the intention that more savings to the taxpayer will result from the plan seems logical, but the criterion to which we are anchored is expressed in the Constitutional prohibition. Although we are not troubled about approving a sale of the refunding bonds and the use of the proceeds to retire the refunded bonds instead of a physical exchange of the new bonds for the old, we do not find the Constitutional provisions sufficiently elastic to extend the ruling to approval of the protracted plan of redemption now undertaken. In this connection, we reaffirm our holding in Fleeman v. City of Jacksonville, 140 Fla. 478, 191 So. 840 (later quoted with approval in State v. Board of Public Instruction of Broward'. County, 164 So.2d 6) viz:
“It is next contended that the refunding bonds are violative of Section Six, Article Nine of the Constitution, because the petition for validation shows on its face that petitioner proposes to issue the refunding bonds without provision for simultaneous cancellation of the bonds sought to be refunded.
“ * * *
“(2) In the very nature of the transaction, it would generally be impracticable to provide for cancellation of the outstanding bonds simultaneously with the issue of the refunding bonds. The outstanding bonds mature on fixed dates and the law contemplates that the proceeds of the refunding will be at the place of payment to take the place of principal and interest of the outstanding bonds when they mature. All this should be done as expeditiously as circumstances will permit but the fact that there is a reasonable lapse between the maturity of the outstanding bonds and the issue of the refunding bonds in no sense increases the indebtedness or makes outstanding both sets of bonds at the same time. In a business transaction of this kind and running over the period required, it is hardly reasonable to expect that every element in chronology will synchronize.”
Nothing herein contained is in any respect to be construed as receding from or modifying the views expressed in City of Miami v. State, 13-9 Fla. 598, 190 So. 774; State v. City of Miami, 155 Fla. 6, 19 So.2d 410 and State v. City of Orlando, Fla., 82 So. 2d 874.
The appellee has directed us to a decision of the Supreme Court of Alabama, Taxpayers and Citizens of Shelby County v. Shelby County, 246 Ala. 192, 20 So.2d *217 36, and one of the Supreme Court of New Mexico, City of Albuquerque v. Gott, 73 N. M. 439, 389 P.2d 207, which seem to have approved similar plans. But we say simply that we are not prepared to stretch our Constitution so far.
Consequently, the decree validating and confirming the refunding bond is — -
Reversed.
THORNAL, C. J., and ROBERTS, DREW, O’CONNELL, CALDWELL and ERVIN, JJ., concur.