BOYD, Justice.
These consolidated cases are before the Court on appeal from final judgments of the circuit court in Duval County validating two bond issues of the Jacksonville Electric Authority. We have jurisdiction. Art. V, § 3(b)(2), Fla.Const.
The Jacksonville Electric Authority (JEA) and Florida Power and Light Company entered into an agreement entitled “Agreement for Joint Ownership, Construction and Operation of St. John’s River Power Park Coal Units # 1 and # 2.” The purpose of the agreement is for the two parties to jointly construct and operate two new coal-fired electric generating plants. Under the agreement the JEA will finance and own 80% and Florida Power will finance and own 20% of the project. The JEA also agrees to sell and Florida Power agrees to buy 2>Th% of JEA’s 80% share of the electricity to be generated. The JEA will sell the remaining 62V2% of the power, which amounts to 50% of the total output, to its existing electric system, which in turn will supply the electricity to its customers.
Pursuant to chapter 80-513, Laws of Florida, as amended by chapter 82-312, Laws of Florida, the JEA adopted a resolution authorizing the issuance of bonds in the amount of $1.8 billion to finance its 80% share of the cost of the project. The bond resolution specified that the principal and interest on the bonds shall be paid from the revenues earned by the two new coal-fired electric generating plants.
In order to make the bonds more attractive to potential purchasers, the JEA wanted to dissolve all covenants relating to its revenues by retiring all outstanding bonds constituting liens on its revenues. To accomplish this purpose, the JEA adopted a resolution authorizing a separate bond issue in the amount of $487 million. The proceeds of the second bond issue are to be used to refund all the JEA’s outstanding obligations and to carry forward previously authorized but unissued bonds to finance capital projects in connection with the JEA’s existing electric system.
As is required by the same special laws authorizing the JEA to issue these bonds, the Jacksonville City Council adopted, by a two-thirds majority, ordinances approving the two bond issues. The JEA instituted the proceedings to have the bonds validated. The State of Florida answered and Jacksonville Shipyards, Inc., intervened in opposition to the bond issues. The circuit court held a hearing and rendered judgment validating both bond issues.
Appellants argue that the bonds are payable from ad valorem taxation and therefore cannot be issued without a referendum because of the requirement in article VII, section 12(a) of the Florida Constitution. They argue that this constitutional provision is implicated not directly but indirectly in that all of the city’s non-ad valorem revenues are pledged. They argue that this will have the constitutionally impermissible effect of requiring the city to levy ad valo-rem taxation. In support of their argument appellants cite County of Volusia v. State, 417 So.2d 968 (Fla.1982).
The appellants’ assertion that the city has pledged all non-ad valorem revenues to the payment of the bonds is based *1094 upon a section of the joint agreement between JEA and Florida Power. But reference to the relevant passage disproves the appellants’ assertion. Section 2.4.2(iv) of the agreement provides:
(iv) the approval of this Agreement by the Council constitutes this Agreement a contract which may not be impaired by subsequent legislative action of the Council and which obligates the Council to make the annual appropriations necessary for JEA to perform all of its obligations under this Agreement and the Bond Resolution, including its contractual obligations to make any and all payments required by the terms of this Agreement and the Bond Resolution, but the Council shall be required to make such appropriations solely from the revenues of JEA’s electric generation, transmission and distribution facilities or other non ad valo-rem revenues or funds of JEA....
Appellant’s Consolidated Appendix at 122 (emphasis added).
Appellants misinterpret section 2.4.2(iv). The underscored words “other non ad valo-rem revenues” are modified by the subsequent prepositional phrase, “of JEA.” It is not all of the city’s non-ad valorem revenues that are pledged. The city pledges certain revenues to the payment of the bonds, but the pledged revenues are those which the city receives from the JEA and are derived from the operation of its electric generating plants. Since the city itself has not pledged all of its non-ad valorem tax revenues, our decision in County of Volusia is not relevant to this case. There is nothing in the agreement which even remotely suggests that the city has pledged any revenues other than those received from the JEA.
The appellants also suggest that the rule of County of Volusia v. State is implicated here because the city has pledged all of the revenues it receives from the JEA. Because all of the JEA’s revenues are pledged to the payment of the bonds, appellants argue, the city is liable to lose the annual contribution it receives from the JEA. Appellants argue that if the city is deprived of this annual contribution, it may be forced to levy ad valorem taxes, which requires a referendum under article VII, section 12 and County of Volusia v. State.
The charter of the City of Jacksonville authorizes the city council to appropriate, for city purposes, up to 30% of the gross revenues of the JEA. There was testimony that for the past several years, the city has annually appropriated to itself only six to seven percent of the JEA’s revenues. The JEA treats the annual mandatory contribution to the city as one of its operating costs and sets its rates accordingly. Thus the JEA sets its rates in such amounts as are necessary to meet all of its costs and debt obligations, and to make the required contribution to the city. Of course, appellants are correct in pointing out that the city has in effect agreed to give up the annual contribution if the JEA’s revenues are insufficient to pay both the bondholders and the city. But the possibility that the city will not receive an annual contribution from the JEA will have at the very most a merely incidental effect on the city’s exercise of its ad valorem taxing power. The situation does not even begin to approach the actual compulsion to increase ad valorem taxes which we found in County of Volusia v. State.
The joint agreement provides that the bonds are not to be deemed an indebtedness of the city which would require it to levy ad valorem taxes. Section 2.4.2(viii) provides:
(viii) neither the Agreement nor the Bond Resolution nor the obligation of the Council to appropriate annually and make funds legally available to JEA nor the Bonds, as defined in the Bond Resolution, constitute an indebtedness of the City within the meaning of any constitutional, statutory or charter provisions requiring the City to levy ad valorem taxes, or a lien upon any properties of or in the City, or of JEA.
Appellants’ Consolidated Appendix at 123. Since the bonds are secured by a pledge of revenues to be derived from a non-ad valo-rem local revenue source — in this case rates paid by electricity users — they are not re *1095 quired to be approved by referendum. See, e.g., State v. Miami Beach Redevelopment Agency, 392 So.2d 875 (Fla.1980); State v. Orange County, 281 So.2d 310 (Fla.1973); State v. City of Miami Beach, 234 So.2d 103 (Fla.1970).
Appellants also argue that an election must be held because the joint agreement authorizes the JEA to mortgage its ownership interest as security for present or future bonds. Paragraph 12.1.1 of the joint agreement provides:
12.1.1 Mortgages, etc. Each Co-owner shall have the right at any time, and from time to time, to mortgage, create, or provide for a lien upon, or a security interest in, or convey in trust all or a part of, its Ownership Interest (or, with respect to JEA, subject to the limitations with respect to the revenues of the Electric System set forth in Section Seven, the revenues to be derived by JEA under Section 6.17) under a deed of trust, mortgage, indenture or security agreement, as security for its present or future bonds or other obligations or securities, without need for the prior written consent of the other Co-owner and without such mortgagee, trustee, or secured party assuming or becoming in any respect obligated to perform any of the obligations of the Co-owners.
Appellee’s Consolidated Appendix at 63-64.
Appellants point out that “revenue bonds secured by a mortgage on the physical properties to be financed cannot be issued by public bodies unless approved at an election.” State v. Putnam County Development Authority, 249 So.2d 6, 11 (Fla.1971). In response the JEA says that the agreement does not require the mortgaging of the facilities to secure payment of the bonds, but rather, merely permits, as between the two parties, the JEA to do so. JEA argues that it will seek the approval of the voters should it ever decide to mortgage its interest in the project.
We agree with the JEA’s interpretation. The main purpose of this paragraph is to allow each co-owner to mortgage its interest without the approval of the other. It does not require either co-owner to mortgage its interest. This paragraph merely allows the JEA to mortgage its ownership interest without the prior consent of Florida Power. Before it can do so, however, the JEA will have to seek the approval by referendum of the electors. Since as of now there has been no attempt by the JEA to mortgage its ownership in the plants to be constructed and pledge such mortgage as payment for the bonds, we need not address this issue.
Next appellants argue that there has been an improper delegation of legislative authority or contracting away of the police power. Jacksonville Shipyards, which had raised this issue as an affirmative defense but later withdrew it, now argues that the trial court did not have the authority to decide this question. We quickly reject this notion as any issue concerning the power to issue bonds is a proper one to be considered in a bond validation proceeding. Speer v. Olson, 367 So.2d 207 (Fla.1978). The question of improper delegation of legislative authority is one that has been considered before in bond validation cases. See State v. Housing Finance Authority, 376 So.2d 1158 (Fla.1979); State v. Florida State Turnpike Authority, 80 So.2d 337 (Fla.1955).
Appellants argue that in the agreement with Florida Power the City of Jacksonville and the JEA have delegated or contracted away their governmental authority to exercise the police power. Since the city and the JEA have acted pursuant to chapter 82-312, Laws of Florida, appellants are in effect attacking the constitutionality of that law, which provides:
Section 13. (a) In order to enable the Authority and any other electric utility or group of electric utilities which enter into an agreement for a joint electric power project under Section 2(a) to coordinate their joint activities with respect to the construction and operation of such joint electric power project in an efficient manner, the Authority shall have the following powers, in addition to the powers otherwise conferred:
*1096 (1) Subject to the provisions and limitations contained in subsection (b), to provide in the agreement for the management of the construction and operation of the joint electric power project by one or more committees composed of representatives of parties to the agreement, and to designate one or more representatives of the Authority to serve on any such committee.
(2) Subject to the provisions and limitation contained in subsection (b), to act as agent, or to designate one or more of the other parties to the agreement to act as agent, for all the parties in carrying out the construction or operation of the joint electric power project. Any party so acting as agent for the construction or operation of the joint electric power project need comply with only those laws, rules and regulations which would be applicable if it were acting solely in its own behalf with respect to its interest in such joint electric power project under this act.
(b) The Authority may delegate to any committees referred to in subsection (a), or to any party to the agreement designated as agent in accordance with subsection (a), or to any officer or employee of the Authority, the responsibility and authority to undertake activities in furtherance of the construction and operation of the joint electric power project to such extent as the Authority, in its discretion, may deem proper and appropriate or to such extent as shall be provided in the agreement; provided, however, that, to the extent such activities involve discretionary authority, any such committee, or agent or officer or employee of the Authority, shall be authorized to undertake such activities only in accordance with policies and procedures approved by the Authority and in a manner consistent with prudent utility practice.
Ch. 82-312, § 9, Laws of Fla. This law was intended to implement the provisions of article VII, section 10 of the Florida Constitution. Ch. 82-312, § 5, Laws of Fla. Although that constitutional provision generally prohibits a special district from becoming a joint owner with any corporation, an exception is made for laws authorizing
(d) a municipality, county, special district, or agency of any of them, being a joint owner of, giving, or lending or using its taxing power or credit for the joint ownership, construction and operation of electrical energy generating or transmission facilities with any corporation, association, partnership or person.
Art. VII, § 10(d), Fla.Const.
This law authorizes the JEA to delegate its responsibilities in constructing or operating the joint electric power plant to a committee, a party to the agreement, or to any employee. However, any discretionary activities undertaken by such committee, party, or employee must first be authorized in accordance with policies and procedures approved by the JEA. This provision prohibits the JEA from completely delegating or contracting away any of its discretionary governmental authority. Any delegation of discretionary authority must be done pursuant to guidelines adopted by the JEA which are specific enough to prevent the exercise of completely unbridled discretion. This requirement is reflected in section 5.2 of the agreement between the JEA and Florida Power which provides that the exercise of any discretionary authority shall be done pursuant to specific authorization by the JEA or in accordance with policies and procedures approved by the JEA. Appellee’s consolidated Appendix at 49. Hence there is nothing in chapter 82-312 or in the agreement which constitutes an unlawful delegating or contracting away of the governmental authority to exercise the police power.
Next, appellant Jacksonville Shipyards argues that the 487 million dollar bond issue does not meet the “lower net average interest cost rate” requirement found in article VII, section 12(b) of the Florida Constitution. Since that provision relates only to bonds payable from ad valo-rem taxation, it is not applicable to this case. State v. City of Sunrise, 354 So.2d 1206 (Fla.1978).
*1097 Finally, appellants claim that the outstanding obligations will not be refunded in a reasonable period of time as required by this Court’s decision in State Board of Public Instruction, 177 So.2d 214 (Fla.1965). That case, however, involved refunding bonds which were payable from ad valorem taxation and were therefore subject to the constitutional proscription of increasing public debt without the approval of the electors. There is no similar requirement that revenue refunding bonds must refund outstanding bonds within a reasonable period of time.
The proceeds from the sale of these refunding bonds will be deposited in an escrow account and invested in United States Treasury Securities specifically designed for and available only to tax-exempt issuers of refunding bonds. Under this financial plan enough money will be invested at a given interest rate to insure that the principal and earned interest will be sufficient to refund the outstanding obligations as they become due. A similar arrangement was approved by this Court in State v. City of Sunrise.
In conclusion, we .find that the issues raised by the appellants against the validity of the proposed bond issues are without merit. Therefore, the judgments of the circuit court validating these two bond issues are hereby affirmed.
It is so ordered.
ALDERMAN, C. J., and ADKINS, OVERTON, MCDONALD and EHRLICH, JJ., concur.