Mr. Wesley R. Poole City Attorney City of Fernandina Beach Post Office Box P Fernandina Beach, Florida 32034
Dear Mr. Poole:
You have asked on behalf of the City Commission of the City of Fernandina Beach substantially the following question:
May the City of Fernandina Beach hire a city manager under a multi-year employment contract which would extend beyond the term of the present city commission without violating the State Constitution or Florida Statutes?
In sum:
Absent a specific pledge of ad valorem tax revenues to fund a multi-year employment contract for the city manager, the city may enter into such a contract without referendum approval.
You state that the city commission wishes to hire a city manager under a multi-year contract which would extend beyond the current terms of one or more commissioners. The city manager's salary and other benefits are paid from the city's general fund, which is funded in part by ad valorem tax revenues. None of the city manager's salary or benefits under the employment contract would be secured by a direct pledge of ad valorem taxes.[1]
Previously, in Florida, the governing body of a municipality could not enter into a contract that extended beyond the terms of office of the members, if the subject matter of the contract was governmental. The governing body could, however, enter into contracts involving subjects of a proprietary nature and which were reasonable in the length of time to be extended.[2]
This distinction between proprietary and governmental functions is no longer followed in Florida, in light of s. 166.021(4), F.S.,[3]
securing broad municipal home rule powers to cities.[4] Thus, the governing body of a municipality, in the absence of a charter or ordinance limitation,[5] may enter into contracts, either proprietary or governmental in nature, for a period in excess of its term.[6]
Accordingly, in the absence of a charter or ordinance provision limiting the commission's authority, the city commission may hire a city manager under a multi-year employment contract which extends beyond the terms of the present commissioners.
You are concerned that the multi-year employment contract may constitute a pledge of ad valorem taxing power requiring referendum approval pursuant to s. 12, Art. VII, State Const. Section 12, Art. VII, State Const., provides:
Counties, school districts, municipalities, special districts and local governmental bodies with taxing powers may issue bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance only: (a) to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation; or (b) to refund outstanding bonds and interest and redemption premium thereon at a lower net average interest cost rate. (e.s.)
Thus, if a municipality enters into a contract to finance or refinance a capital project authorized by law which involves payments for a term in excess of twelve months, with such payments to be funded from ad valorem tax, referendum approval is necessary. The present situation does not involve the financing or refinancing of a capital project. It would appear, therefore, that s. 12, Art. VII, State Const., has no application.
Furthermore, you indicate that no ad valorem tax revenues are being pledged to fund the multi-year employment contract. While the early termination of the employment contract may result in city's having a contractual obligation to pay the city manager for his or her remaining contract time, there is no security interest which may be foreclosed or repossessed, nor is there a pledge of the city's taxing authority.[7] Even in situations where specific, but not all, non-ad valorem tax sources have been pledged to fund an agreement, it has been judicially determined that the possibility of not receiving the funds from the non-ad valorem source would have merely an incidental effect on the city's taxing power, with no requirement of referendum approval.[8]
Accordingly, the city may enter into a multi-year employment contract with the city manager without referendum approval, if no ad valorem taxes are pledged to secure the contract.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] You have also asked whether a provision in the city charter stating that the city manager shall serve at the pleasure of the city commission limits the authority of the city commission to hire a city manager under a multi-year employment contract. This office does not interpret local charters or ordinances and will not, therefore, comment upon the effect of this charter provision. See, Statement of Policy Concerning Attorney General Opinions.
[2] See, City of Riviera Beach v. Witt, 286 So.2d 574 (4 D.C.A. Fla., 1973), cert. denied, 295 So.2d 305 (Fla. 1974).
[3] Section 166.021(4), F.S., in pertinent part, provides:
The provisions of this section shall be so construed as to secure for municipalities the broad exercise of home rule powers granted by the constitution. It is the further intent of the Legislature to extend to municipalities the exercise of powers for municipal governmental, corporate, or proprietary purposes not expressly prohibited by the constitution, general or special law, or county charter and to remove any limitations, judicially imposed or otherwise, on the exercise of home rule powers other than those so expressly prohibited. . .
[4] See, Town of Indian River Shores v. Coll, 378 So.2d 53 (4 D.C.A. Fla., 1979).
[5] See, Footnote 1, supra.
[6] 378 So.2d at 55. See also, Tweed v. City of Cape Canaveral,373 So.2d 408 (4 D.C.A. Fla., 1979) (Section 166.021[4], F.S., authorizes a city council to enter into contracts, governmental or proprietary in substance, which extend beyond the term of office of the council).
[7] See, AGO 80-9, generally discussing the necessity of referendum approval when a security interest is created in municipal property and ad valorem taxes may be used to avoid the loss of the asset.
[8] See, Jacksonville Shipyards, Inc. v. Jacksonville Electric Authority, 419 So.2d 1092 (Fla. 1982), and City of Palatka v. State, 440 So.2d 1271, 1273 (Fla. 1983).